STATE OF NORTH CAROLINA v. RUSSELL WILLIAM TUCKER

No. 113A96

(Filed 3 October 1997)

**1. Criminal Law § 498 (NCI4th Rev.)— capital murder—police vehicle—jury view—no abuse of discretion**

The trial court did not abuse its discretion in a capital prosecution for first-degree murder by allowing the jury to view a police vehicle into which defendant had fired while fleeing the

murder. Although defendant contended that the jury view was cumulative, defendant's intent when he fired the shots into the vehicle was at issue and the condition of the damaged vehicle is indicative of such intent. The trial court's decision to allow the jury view was well within its discretion.

**Am Jur 2d, Trial §§ 258, 259, 264.**

2. **Criminal Law § 188 (NCI4th Rev.)— capital murder— capacity to stand trial—sufficiency of evidence**

There was sufficient competent evidence in a capital prosecution for first-degree murder to support the trial court's finding that defendant had the capacity to proceed to trial where defendant was examined at Dorothea Dix Hospital; the forensic psychiatrist who prepared a discharge summary diagnosed him as having antisocial personality disorder but thought he was malingering; defendant was referred to a staff psychologist at Dix who found that defendant was not psychotic but appeared to be malingering and attempting to fake psychosis; another expert opined that defendant was not competent to stand trial but that it was possible he was malingering; defendant was so disruptive with religious outbursts during a pretrial motions hearing that he had to be restrained; and the forensic psychologist testified that defendant was competent to stand trial and was malingering, based on the eight-day examination of defendant at Dix, a review of jail records, a review of the transcript from a hearing, a review of psychological information from tests, observations of defendant on the date the capacity hearing began, and her interview with defendant.

**Am Jur 2d, Criminal Law §§ 124-128.**

**Modern status of test of criminal responsibility— federal cases. 56 ALR Fed. 326.**

3. **Homicide § 262 (NCI4th)— felony murder—felony after murder**

The trial court did not err by not dismissing a felony murder charge where defendant left a K-Mart wearing clothes for which he had not paid; shot and killed a security guard who followed him into a parking lot; ran approximately four hundred feet; and fired into a police vehicle which approached him, striking both officers inside. The evidence tended to show that defendant stole merchandise from the Super K-Mart Center, shot at two

employees of K-Mart in an effort to avoid apprehension, fatally wounding one, and at two law enforcement officers, and that the entire incident consumed less than two minutes.

**Am Jur 2d, Homicide § 442.**

**4. Criminal Law § 564 (NCI4th Rev.)— capital murder—reference to previous murder—mistrial denied**

The trial court did not err by denying defendant's motion for a mistrial in a capital prosecution for first-degree murder where defendant admitted on cross-examination by the State to having fired the gun used here several times and to having pled guilty to second-degree murder in another case; the State asked defendant whether he had fired the gun in that case; defense counsel objected and the court sustained the objection; defendant moved for a mistrial out of the presence of the jury; the trial court reviewed the law at length with counsel; the court overruled defendant's objection and denied defendant's motion for mistrial at one point; by the end of the court's consideration, the prosecutor stated that the State could live with sustaining the objection and would not pursue that line of inquiry; the court stated to the jury that the objection was sustained; and, when it became clear that the issue of whether the question was permitted was mooted, defendant specifically requested that curative instructions not be given. Whether a mistrial should be granted rests in the sound discretion of the trial court; the trial court here was well within its discretion in concluding that this was not a situation in which an impropriety made it impossible for defendant to attain a fair and impartial verdict under the law.

**Am Jur 2d, Trial § 626.**

**5. Criminal Law § 101 (NCI4th Rev.)— capital murder— defendant's statement at scene—State's good faith failure to discover—statement admitted—no abuse of discretion**

The trial court did not err in the capital first-degree murder prosecution of a defendant who shot a K-Mart security guard who had followed him into a parking lot by denying defendant's renewal of his motion *in limine* to exclude defendant's statement "Come here, I've got something for you" immediately prior to the shooting. A witness informed the State that he recalled the statement the day before jury selection began on 5 February 1996; the State claims that it informed defense counsel of the rec-

STATE v. TUCKER

[347 N.C. 235 (1997)]

ollection within half an hour of learning of it; the witness testified at trial that he first told law enforcement officers of his recollection on 7 December 1995; defendant asked the court to reconsider its ruling; and the witness was again questioned and testified that he first told the State about his recollection on 5 February and that he had gotten confused during his earlier testimony. Defendant made no argument that the State failed to comply with the rules of discovery and contended that good faith by the State does not relieve it of responsibility for finding facts which can be found with reasonable diligence. However, the choice of sanctions, if any, rests in the discretion of the trial court and defendant failed to make any showing of abuse of discretion.

**Am Jur 2d, Evidence §§ 710, 723; Trial § 1359.**

**6. Criminal Law § 1402 (NCI4th Rev.)— death sentence—not disproportionate**

A death sentence was not disproportionate where the record fully supports the jury's finding of aggravating circumstances; there is no indication that the sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor; this case is distinguishable from the seven in which the death penalty was found disproportionate in that this defendant was convicted of murder by premeditation and deliberation which indicates a more cold-blooded and calculated crime; defendant was found guilty of felony murder based on several underlying felonies; and there were two statutory aggravating factors which are among the four held sufficient to sustain a death sentence standing alone. This case is more similar to cases in which the sentence was found proportionate than to those in which it was found disproportionate or those in which juries have returned recommendations of life imprisonment.

**Am Jur 2d, Criminal Law § 628.**

**Sufficiency of evidence, for death penalty purposes, to establish statutory aggravating circumstance that murder was committed in course of committing, attempting, or fleeing from other offense, and the like—post-*Gregg* cases. 67 ALR4th 887.**

Appeal of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Martin (Jerry Cash), J., on 21 February 1996 in Superior Court, Forsyth County, upon a jury ver-

dict finding defendant guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals as to additional judgments was allowed 25 February 1997. Heard in the Supreme Court 10 September 1997.

> *Michael F. Easley, Attorney General, by Ralf F. Haskell, Special Deputy Attorney General, for the State.*

> *Richard D. Ramsey and Thomas G. Taylor for defendant-appellant.*

WHICHARD, Justice.

On 31 July 1995 defendant was indicted for the first-degree murder of Maurice Travone Williams, assault with a deadly weapon with intent to kill inflicting serious injury to S.E. Spencer, and assault with a deadly weapon with intent to kill inflicting serious injury to H.M. Bryant, all occurring on 8 December 1994. Defendant was tried capitally, and the jury returned a verdict finding him guilty of first-degree murder on the theory of premeditation and deliberation and under the felony murder rule. Following a capital sentencing proceeding pursuant to N.C.G.S. § 15A-2000, the jury recommended that defendant be sentenced to death. The trial court sentenced defendant accordingly. Subsequent to the sentencing on the murder charge, the State dismissed the two assault charges. For the reasons set forth herein, we conclude that defendant received a fair trial, free from prejudicial error, and that the sentence of death is not disproportionate.

The evidence presented at trial tended to show that at approximately 10:00 p.m. on 8 December 1994, defendant walked out of the Super K-Mart Center on University Parkway in Winston-Salem, North Carolina, wearing a coat and a pair of boots for which he had not paid. He was followed by Assistant Loss Control Manager William Maki. Travis Church, a K-Mart employee, and Maurice Travone Williams, a security guard, followed shortly behind Maki. Maki asked defendant for a receipt, and according to Maki, defendant responded, "Come on, I've got something for you."

Defendant then removed a Lorcin .380-caliber semiautomatic pistol from his knapsack with his right hand and fired at Maki's face from a distance of approximately six feet. Maki was not struck by the shot but received gunpowder burns on his face. Williams and Church began running back toward the store, and defendant switched the gun from his right to his left hand. Defendant then shot and killed

Williams with one shot that penetrated his aorta and both lungs. Five to ten seconds elapsed between defendant's attempt to shoot Maki and the second shot at Williams.

Defendant had run approximately four hundred feet to an area in the parking lot of the Super K-Mart Center when he was approached by a police vehicle. Winston-Salem Police Officer S.E. Spencer was operating the marked police vehicle, and Winston-Salem Police Officer H.M. Bryant was a passenger. As defendant slowed to a walk, he turned and fired five shots into the vehicle, striking both Spencer and Bryant. The time between the shooting of Williams and the shooting of Spencer and Bryant was described as being between forty-five seconds and a couple of minutes.

Defendant then fled up an embankment and into some woods. He was apprehended by police officers forty-five minutes to one hour later.

[1] Defendant first contends that the trial court abused its discretion by allowing the jury to view the police vehicle he shot during the incident. Defendant argues that the jury view was cumulative because the State published pictures of the vehicle to the jury, and several witnesses testified about the shots fired into the vehicle.

N.C.G.S. § 15A-1229(a) provides in pertinent part: "The trial judge in his discretion may permit a jury view." A decision to allow a jury view will not be disturbed absent an abuse of discretion. *See State v. Simpson*, 327 N.C. 178, 193, 393 S.E.2d 771, 780 (1990). "A trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision." *State v. Wilson*, 313 N.C. 516, 538, 330 S.E.2d 450, 465 (1985).

The trial court here considered arguments and evidence presented by both the State and defendant before allowing the jury view. Defendant made substantially the same argument at trial that he makes here. The State argued that the jury view was necessary to rebut defendant's claim that he fired the pistol while in a panicked, confused, and disoriented state. The State contended that the jury's seeing the vehicle was an important means of proving that defendant intended to kill when he fired toward it. The State further argued that the jury view would not be cumulative because the jury did not have a picture of a bullet which was lodged in the vehicle's steering column near the driver's chest.

STATE v. TUCKER

[347 N.C. 235 (1997)]

After considering these arguments, the trial court stated, "The court is of the view that the police vehicle view would be helpful to an understanding of this matter by the jurors." The court further ruled that the evidence was relevant pursuant to N.C. R. Evid. 401 and that its probative value outweighed any danger of unfair prejudice under N.C. R. Evid. 403.

Because defendant's intent when he fired shots into the vehicle was at issue and because the condition of the damaged vehicle is indicative of such intent, the trial court's decision to allow the jury view was well within its discretion. Accordingly, this assignment of error is overruled.

[2] Defendant next contends that the trial court erred in finding that defendant had the capacity to proceed to trial. He concedes the court followed the proper procedures but argues that there was insufficient competent evidence to support the finding.

The test for determining a defendant's capacity to stand trial is whether, at the time of trial, the defendant has "the capacity to comprehend his position, to understand the nature and object of the proceedings against him, to conduct his defense in a rational manner, and to cooperate with his counsel to the end that any available defense may be interposed." *State v. McCoy*, 303 N.C. 1, 18, 277 S.E.2d 515, 528 (1981). After defendant raised the issue, he was examined, pursuant to court order, at Dorothea Dix Hospital from 10-18 August 1995. His attending physician, Dr. Nicole Wolfe, a forensic psychiatrist, prepared a discharge summary when defendant was released, diagnosing him as having antisocial personality disorder; she also thought he was malingering. On 11 August 1995 Wolfe referred defendant to Edwin D. Munt, a staff psychologist at Dorothea Dix. Munt found that defendant did not appear psychotic; rather, he appeared to be malingering his mental illness and attempting to fake psychosis. Dr. Sam Manoogian, an expert in clinical psychology, examined defendant on four occasions between 18 November 1995 and 7 December 1995. He opined that defendant was not competent to stand trial but that it was possible that he was malingering. Manoogian recommended a month-long course of medication and observation.

During a pretrial motions hearing, defendant was so disruptive with outbursts of a religious nature that he had to be physically restrained. Wolfe testified that defendant was competent to stand trial and was malingering. She specifically testified that defendant

understood the court action, understood the proceedings and his role in them, and could assist with his defense. Her opinion was based on the eight-day examination at Dorothea Dix, a review of jail records, a review of the transcript from a hearing on 17 November 1995, a review of psychological information from MMPI and Rorschach tests, her observations of defendant on 7 December 1995 (the date the capacity hearing began), and her interview with defendant.

"When the trial court, without a jury, determines a defendant's capacity to proceed to trial, it is the court's duty to resolve conflicts in the evidence; the court's findings of fact are conclusive on appeal if there is competent evidence to support them, even if there is also evidence to the contrary." *State v. Heptinstall*, 309 N.C. 231, 234, 306 S.E.2d 109, 111 (1983). There is sufficient competent evidence here supporting the trial court's finding that defendant had the capacity to proceed to trial. This assignment of error is therefore overruled.

**[3]** Defendant argues next that the trial court erred by not dismissing the charge of first-degree murder brought under the felony murder theory. Defendant contends that the sequence of events connecting the killing of Williams with the assaults on Maki and Officers Spencer and Bryant was not sufficiently related to be considered a "continuous transaction."

The statute governing felony murder provides in pertinent part: "A murder . . . which shall be committed in the perpetration or attempted perpetration of any . . . felony committed or attempted with the use of a deadly weapon shall be deemed to be murder in the first degree." N.C.G.S. § 14-17 (Supp. 1996). In *State v. Hutchins*, 303 N.C. 321, 345, 279 S.E.2d 788, 803 (1981), this Court stated:

A killing is committed in the perpetration or attempted perpetration of a felony for purposes of the felony murder rule where there is no break in the chain of events leading from the initial felony to the act causing death, so that the homicide is part of a series of incidents which form one continuous transaction.

We have held further that "[t]he temporal order of the killing and the felony is immaterial where there is a continuous transaction, and it is immaterial whether the intent to commit the felony was formed before or after the killing, provided that the felony and the killing are aspects of a single transaction." *State v. Roseborough*, 344 N.C. 121, 127, 472 S.E.2d 763, 767 (1996).

"In passing upon a defendant's motion to dismiss, the court must consider the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference." *State v. Aikens*, 342 N.C. 567, 573, 467 S.E.2d 99, 103 (1996). The State's evidence tended to show that defendant stole merchandise from the Super K-Mart Center, and in an effort to avoid apprehension, he shot at two employees of K-Mart, fatally wounding one, and at two law enforcement officers. The entire incident consumed less than two minutes. Ample evidence supported the trial court's finding of a continuous chain of events linking the killing of Williams with the other assaults. The trial court's denial of defendant's motion to dismiss was proper, and this assignment of error is therefore overruled.

[4] Defendant next contends that the trial court committed reversible error by denying defendant's motion for a mistrial when the State inquired into a previous crime defendant committed. On cross-examination by the State, defendant admitted to having fired the gun used here several times before. Defendant also admitted to having pled guilty to second-degree murder in another case. The State then asked defendant, "You fired the gun in that other case, didn't you?" Before defendant could answer, defense counsel objected, and the trial court sustained the objection. The court excused the jury, and out of its presence defendant moved for a mistrial based on this question. The trial court reviewed the law on these matters at length with counsel for the State and the defense. At one point the court overruled defendant's objection to the State's question and denied defendant's motion for a mistrial. By the end of the court's consideration, however, the prosecutor stated, "The State will live with the court['s] sustaining objection to the last question the State asked and will not pursue that line of inquiry." When the jury was again present, the court stated, "The objection to the last question is sustained."

The issue was whether the State's question was permitted under N.C. R. Evid. 404(b) and 403. Before the court made its final ruling, the issue was mooted by the State's agreement to the court's sustaining of the objection. Further, when it became clear that the issue was moot, defendant specifically requested that curative instructions not be given.

The issue here, then, is whether the question was so prejudicial that the trial court should have granted a mistrial. Our statute provides in pertinent part:

Upon motion of a defendant or with his concurrence the judge may declare a mistrial at any time during the trial. The judge must declare a mistrial upon the defendant's motion if there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case.

N.C.G.S. § 15A-1061 (1988). Whether a mistrial should be granted rests in the sound discretion of the trial court, and the exercise of its discretion will not be reversed on appeal absent an abuse of discretion. *State v. Craig*, 308 N.C. 446, 454, 302 S.E.2d 740, 745, *cert. denied*, 464 U.S. 908, 78 L. Ed. 2d 247 (1983). "A mistrial is appropriate only when there are such serious improprieties as would make it impossible to attain a fair and impartial verdict under the law." *State v. Blackstock*, 314 N.C. 232, 243-44, 333 S.E.2d 245, 252 (1985).

Here the State asked a question seeking information that conceivably should have been excluded. Defendant never answered the question. He objected, and the court sustained the objection in the presence of the jury. Defendant specifically asked that curative instructions not be given. The trial court was well within its discretion in concluding that this was not a situation in which an impropriety made it impossible for defendant to attain a fair and impartial verdict under the law. This assignment of error is without merit.

**[5]** Defendant next argues that the trial court committed reversible error when it denied defendant's renewal of his motion *in limine*. According to the State, on 5 February 1996, the day before jury selection began, Maki, K-Mart's Assistant Loss Control Manager, informed the State that he recalled hearing defendant say, "Come here, I've got something for you," immediately prior to shooting at Maki and then fatally shooting Williams. The State claims that it informed defense counsel of Maki's recollection within half an hour of learning of it. Defendant moved *in limine* to exclude Maki's testimony regarding his recollection because of its prejudicial nature and the late notice to defendant. The trial court ruled that the statement was relevant under N.C. R. Evid. 401, that its probative value outweighed any prejudice to defendant under N.C. R. Evid. 403, and that the State had supplemented its responses and complied with the discovery requirements of our statutes. The court therefore denied the motion.

At trial Maki testified that he first told law enforcement officers of his recollection on 7 December 1995. As a result of this testimony,

defendant asked the court to reconsider its ruling on the motion *in limine*. After hearing from both the State and defendant outside the presence of the jury, the court adhered to its prior ruling. Maki was again questioned regarding when he first told the State about his recollection. He testified that he first reported it to the State on 5 February 1996 and that he had gotten confused during his earlier testimony.

Defendant has made no argument that the State failed to comply with the rules of discovery. Rather, he contends that "good faith on the part of the State should not relieve it of the responsibility of finding facts which are there to be found with the exercise of reasonable diligence." In matters of discovery, "[t]he choice of which sanction to apply, if any, rests in the sound discretion of the trial court and is not reviewable absent a showing of an abuse of that discretion." *State v. Gladden*, 315 N.C. 398, 412, 340 S.E.2d 673, 682, *cert. denied*, 479 U.S. 871, 93 L. Ed. 2d 166 (1986). Defendant has failed to make any showing of abuse of discretion. This assignment of error is overruled.

[6] Having found no error in defendant's trial or separate sentencing proceeding, we are required to review the record and determine: (1) whether the evidence supports the aggravating circumstances found by the jury; (2) whether passion, prejudice, or "any other arbitrary factor" influenced the imposition of the death sentence; and (3) whether the sentence is "excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." N.C.G.S. § 15A-2000(d)(2) (Supp. 1996).

The jury found four aggravating circumstances. Pursuant to N.C.G.S. § 15A-2000(e)(3), it found that "[t]he defendant had been previously convicted of a felony involving the use or threat of violence to the person." It found this twice, once based on a previous conviction for second-degree murder and once based on a previous conviction for felony armed robbery. Pursuant to N.C.G.S. § 15A-2000(e)(6), the jury found that "[t]he capital felony was committed for pecuniary gain." Finally, pursuant to N.C.G.S. § 15A-2000(e)(11), the jury found that "[t]he murder for which the defendant stands convicted was part of a course of conduct in which the defendant engaged and which included the commission by the defendant of other crimes of violence against another person or persons."

We conclude that the record fully supports the jury's finding of these aggravating circumstances. Further, we find no indication that

the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor. We therefore turn to our final duty of proportionality review.

One purpose of proportionality review is to "eliminate the possibility that a sentence of death was imposed by the action of an aberrant jury." *State v. Lee*, 335 N.C. 244, 294, 439 S.E.2d 547, 573, *cert. denied*, 513 U.S. 891, 130 L. Ed. 2d 162 (1994). Another is to guard "against the capricious or random imposition of the death penalty." *State v. Barfield*, 298 N.C. 306, 354, 259 S.E.2d 510, 544 (1979), *cert. denied*, 448 U.S. 907, 65 L. Ed. 2d 1137 (1980). To determine whether the sentence of death is disproportionate, we compare this case to other cases that "are roughly similar with regard to the crime and the defendant." *State v. Lawson*, 310 N.C. 632, 648, 314 S.E.2d 493, 503 (1984), *cert. denied*, 471 U.S. 1120, 86 L. Ed. 2d 267 (1985).

We have found the death penalty disproportionate in seven cases. *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Gaines*, 345 N.C. 647, 483 S.E.2d 396 (1997), *and by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983). The instant case is distinguishable from each of these. First, defendant was convicted of first-degree murder by premeditation and deliberation and under the felony murder rule. We have consistently stated that "[t]he finding of premeditation and deliberation indicates a more cold-blooded and calculated crime." *State v. Artis*, 325 N.C. 278, 341, 384 S.E.2d 470, 506 (1989), *sentence vacated on other grounds*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990). Second, the jury found defendant guilty under the felony murder rule based on the commission of several underlying felonies. Finally, there are four statutory aggravating circumstances which, standing alone, this Court has held sufficient to sustain a sentence of death; the (e)(3) and (e)(11) circumstances, which the jury found here, are among them. *State v. Bacon*, 337 N.C. 66, 110 n.8, 446 S.E.2d 542, 566 n.8 (1994), *cert. denied*, 513 U.S. 1159, 130 L. Ed. 2d 1083 (1995).

We conclude that the present case is more similar to cases in which we have found the sentence of death proportionate than to those in which we have found it disproportionate or those in which

ROSIE J. v. N.C. DEPT. OF HUMAN RESOURCES

[347 N.C. 247 (1997)]

juries have returned recommendations of life imprisonment. We conclude that the sentence of death is not disproportionate and hold that defendant received a fair trial and capital sentencing proceeding, free from prejudicial error.

NO ERROR.