STATE OF NORTH CAROLINA v. JOSHUA EARL ANDERSON

No. COA09-220

(Filed 6 October 2009)

**1. Evidence— demonstration—shaken baby syndrome**

The trial court did not err in a felonious child abuse inflicting serious bodily injury and second-degree murder case by admitting a shaken baby syndrome demonstration because the demonstration was relevant to defendant's intent to harm the child, was not misleading to the jury, and was not unfairly prejudicial.

**2. Criminal Law— prosecutor's arguments—failure to present mental health evidence or mental health defense—failure to present accident defense**

The trial court did not err in a felonious child abuse inflicting serious bodily injury and second-degree murder case by overruling defendant's objections to the prosecutor's closing arguments. The prosecutor commented on the lack of evidence supporting the forecast of evidence by defense counsel in the opening statement and did not comment on defendant's failure to testify.

**3. Sentencing— failure to conduct separate proceeding for aggravating factors—abuse of discretion standard**

The trial court did not abuse its discretion in a felonious child abuse inflicting serious bodily injury and second-degree murder case by failing to hold a separate sentencing proceeding for aggravating factors because the plain language of N.C.G.S. § 15A-1340.16(a1) vested the trial court with discretion to bifurcate the felony offense proceeding from the aggravating factor determination.

Appeal by defendant from judgment entered 5 September 2008 by Judge Catherine C. Eagles in Forsyth County Superior Court. Heard in the Court of Appeals 2 September 2009.

*Attorney General Roy Cooper, by Assistant Attorney General LaToya B. Powell, for the State.*

*Randolph & Fischer by J. Clark Fischer, for defendant-appellant.*

STEELMAN, Judge.

The trial court did not err by admitting a demonstration when the State established the relevancy of the demonstration with a proper foundation. Prosecutors are permitted in closing argument to point out the lack of evidence supporting the forecast of evidence made by defendant's counsel in opening statement. The State's argument that certain issues were not contained in the trial court's instructions was not a comment upon defendant's decision not to testify. Under the North Carolina Structured Sentencing Act, the decision not to hold a separate proceeding for aggravating factors is vested in the sound discretion of the trial court and will not be overturned on appeal absent an abuse of discretion.

## I. Factual and Procedural Background

On 17 February 2005, J.S. was born in Forsyth County, North Carolina to Nikki Shepard (Shepard) and Joshua Earl Anderson (defendant), who were both sixteen years old. Shepard and J.S. lived with Shepard's mother until 12 June 2006 when they moved into the home of defendant's mother. Shepard wanted defendant to spend more time with their son because he had only seen J.S. five or six times in the first fifteen months of his life. After the move, defendant told Shepard she was too soft on J.S. because she did not spank or discipline him.

Defendant slept in one bedroom, and Shepard and J.S. slept in another. On 18 June 2006 at approximately 10:00 p.m., Shepard took J.S. into defendant's room to sleep because she could not get him to stop crying. Shepard did not see J.S. until briefly the next morning. On the morning of 19 June 2006, defendant told Shepard he was going to give J.S. a bath, and she went downstairs to wash her clothes. While downstairs, she heard J.S. let out "a little cry," and rushed upstairs to peep into the bathroom. Shepard saw defendant standing over J.S. giving him a bath, and she thought nothing was wrong.

Minutes later, defendant called Shepard into the bathroom and asked her "has [J.S.] ever done this before?" J.S. had his hands above his head and was shaking as if he was having a seizure, and Shepard responded, "No." Shepard immediately called 911.

Emergency personnel rushed J.S. to the ambulance. As Shepard followed behind them, she asked defendant "ain't you going to come?" to which he responded, "No." Defendant did not ride with Shepard and J.S. to the hospital. While in the ambulance, Shepard noticed J.S.'s body was swollen.

Upon arrival to the emergency room, J.S. was in cardiac arrest, he was not breathing, and he was comatose. Emergency doctors resuscitated J.S. and then inserted a breathing tube. Once stabilized, J.S. was transferred to the pediatric intensive care unit at Brenner Children's Hospital, under the care of Dr. Thomas Nakagawa. Dr. Nakagawa examined the results of an X-ray and a Computer Axial Tomography (CAT scan) to identify why J.S. had been in cardiac arrest. The CAT scan revealed J.S. had a parietal hematoma, or a collection of blood underneath his skin, blood over the surface of his brain, and a skull fracture. The X-ray revealed J.S. had a fracture on his left arm near the wrist. J.S. also had a bruise on his forehead and

retinal hemorrhages in both of his eyes. After J.S. was treated in the emergency room, he was then moved to a room in the pediatric intensive care unit of the hospital.

At some point, defendant came to the hospital with his family, but was neither crying nor upset. Defendant recounted the events of the morning for Dr. Nakagawa. Defendant said he gave J.S. a fifteen-minute bath around 8:45 a.m. that morning. During the bath, he left J.S. sitting in eight inches of water for about two seconds. While away from the bathroom, defendant heard a cry and came back to find J.S. standing up in the tub. He took J.S. out of the bathtub and began to put baby lotion on him, when he started having a seizure. Defendant explained to police he "was giving J[.S.] a bath, and J[.S.] slipped out of his hands." After defendant was arrested for felony child abuse inflicting serious injuries, he told the magistrate "he just kept crying, I just got frustrated."

J.S. remained in the pediatric intensive care unit of the hospital for two weeks, until Shepard made the decision to remove life support. On 30 June 2006, J.S. died at the age of sixteen months.

On 3 July 2006, Doctor Ellen Reimer performed an autopsy on J.S. At the time of death, J.S. weighed approximately twenty-three pounds and was about thirty-four inches tall. An external examination revealed a number of injuries to the head and left arm. An internal examination revealed multiple bruises underneath J.S.'s scalp, which were the result of three different areas of impact to the head. One was a fracture to the right parietal bone of the skull approximately two to two-and-a-half inches in length. The cumulative effect of the impacts caused a significant amount of swelling to the brain resulting in additional fractures to the skull. The swelling also caused global hypoxic ischemic injury, or a lack of oxygen flowing to the brain. This lack of oxygen caused irreversible brain damage. Dr. Reimer further discovered a contusion to the front left side of the brain, which resulted from the brain colliding with the skull. All of the injuries to J.S.'s head occurred at the same time. The autopsy concluded that the proximate cause of death was blunt force trauma to the head.

On 4 June 2007, defendant was charged with felonious child abuse inflicting serious bodily injury. This indictment further alleged the aggravating factor that the crime was especially heinous, atrocious, and cruel. On 14 April 2008, defendant was charged with first-degree murder. The murder indictment alleged the aggravating factors that the crime was especially heinous, atrocious, and cruel,

and that the victim was very young. The cases went to trial on 2 September 2008.

On 5 September 2008, the jury found defendant guilty of felonious child abuse inflicting serious bodily injury and second-degree murder. The jury also found all of the aggravating factors that were alleged in the indictments. Defendant was sentenced to an active term of 125 to 159 months for the felonious child abuse charge, and a consecutive term of 237 to 294 months for the second-degree murder charge. Defendant appeals.

## II.  Admission of Shaken Baby Syndrome Demonstration

[1] In his first argument, defendant contends that the trial court erred by admitting the shaken baby syndrome demonstration because the demonstration was irrelevant, misleading, and unfairly prejudicial. We disagree.

### A.  Demonstration Was Relevant

Defendant first asserts that the trial court erred by admitting the shaken baby syndrome demonstration without proper foundation, and that the demonstration was irrelevant.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2007). "[E]ven though a trial court's rulings on relevancy technically are not discretionary . . . such rulings are give great deference on appeal." *State v. Wallace*, 104 N.C. App. 498, 502, 410 S.E.2d 226, 228 (1991), *appeal dismissed and disc. review denied*, 331 N.C. 290, 416 S.E.2d 398, *cert. denied*, 506 U.S. 915, 121 L. Ed. 2d 241 (1992). "The burden is on the party who asserts that evidence was improperly admitted to show both error and that he was prejudiced by its admission." *State v. Gappins*, 320 N.C. 64, 68, 357 S.E.2d 654, 657 (1987) (citation omitted).

The shaken baby syndrome demonstration was relevant. Defendant was charged with felonious child abuse inflicting serious injury and first-degree murder. Defendant's intent to physically harm J.S. was a key element to the jury's determination of this case. *See* N.C. Gen. Stat. §§ 14-17, 14-318.4(a3) (2007). The severity of J.S.'s injuries and how the injuries were inflicted made it more probable defendant intended to harm J.S. A demonstration for the jury of how these injuries were inflicted was relevant to defendant's intent to harm J.S.

The State established the relevancy of this demonstration with a proper foundation. Dr. Reimer, an expert in forensic pathology, performed the autopsy on J.S. She testified that there were multiple bruises to the underside of the scalp located in three different areas, a fracture to the skull, and a contusion on J.S.'s brain. She further testified that these injuries required blunt force trauma to multiple areas of the head, and the spectrum of injuries was not the result of any accident. Doctor Thomas Nakagawa testified as an expert in the areas of intensive care for children and abusive head trauma. Based on his examination of J.S. and the medical records, Dr. Nakagawa opined that J.S. suffered from shaken baby syndrome, and also suffered an impact injury to the head. Dr. Nakagawa used a toy doll to illustrate for the jury how shaken baby syndrome would occur, and the amount of force necessary to cause the kind of injuries suffered by J.S. The State laid a proper foundation for the relevancy of this demonstration. Thus, the trial court did not err by admitting the shaken baby syndrome demonstration. Because defendant fails to show error, we do not examine whether he was prejudiced by its admission.

### B. Demonstration Was Not Misleading or Unfairly Prejudicial

Second, defendant asserts that even assuming *arguendo* the demonstration was relevant, it should still have been excluded because it was both misleading and unfairly prejudicial.

If relevant, a demonstration is admissible when its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . . ." N.C. Gen. Stat. § 8C-1, Rule 403 (2007). Under Rule 403, the decision whether to admit or exclude relevant evidence is within the sound discretion of the trial court. *State v. Mason*, 315 N.C. 724, 731, 340 S.E.2d 430, 435 (1986). " 'A trial court may be reversed for abuse of discretion only upon a showing that its ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision.' " *State v. Mickey*, 347 N.C. 508, 518, 495 S.E.2d 669, 676 (1998) (quoting *State v. Riddick*, 315 N.C. 749, 756, 340 S.E.2d 55, 59 (1986)), *cert. denied*, 525 U.S. 853, 142 L. Ed. 2d 106 (1998).

Defendant argues that the demonstration was misleading to the jury because it was not substantially similar to the manner in which J.S. had been injured. This argument fails to recognize the distinction between an experiment and a demonstration.

An experiment is defined as "a test made to demonstrate a known truth, to examine the validity of a hypothesis, or to determine the efficacy of something previously untried." *State v. Hunt,* 80 N.C. App. 190, 193, 341 S.E.2d 350, 353 (1986). "Experimental evidence is competent and admissible if the experiment is carried out under substantially similar circumstances to those which surrounded the original occurrence." *State v. Locklear,* 349 N.C. 118, 147, 505 S.E.2d 277, 294 (1998) (citations omitted), *cert. denied,* 526 U.S. 1075, 143 L. Ed. 2d 559 (1999). On the other hand, a demonstration is defined as "an illustration or explanation, as of a theory or product, by exemplification or practical application." *Hunt,* 80 N.C. App. at 193, 341 S.E.2d at 353.

Dr. Nakagawa performed a demonstration for the jury to illustrate shaken baby syndrome. This demonstration was not an experiment to prove that J.S. suffered from shaken baby syndrome; thus, requiring substantially similar circumstances to test the validity of such a hypothesis. Rather, Dr. Nakagawa had already given his expert opinion that, based on his examination of J.S., he suffered from shaken baby syndrome. The demonstration illustrated his testimony regarding the kind of movement and amount of force necessary to inflict the type of injuries J.S. suffered. This illustration enabled the jury to better understand his testimony and to realize completely its cogency and force. *See Williams v. Bethany Fire Dept.,* 307 N.C. 430, 434, 298 S.E.2d 352, 354 (1983) (citation omitted); *State v. Witherspoon,* —— N.C. App ——, ——, S.E.2d )___, (2009). The demonstration was not misleading to the jury.

Next, defendant asserts the demonstration was unfairly prejudicial to defendant because it had the potential to drive the jury to an emotional rather than an evidentiary decision.

This Court has previously held that a video demonstration of a doll being subjected to shaken baby syndrome was not unfairly prejudicial. *State v. Carillo,* 149 N.C. App. 543, 552-53, 562 S.E.2d 47, 52-53 (2002). The video demonstration in *Carillo* was more graphic than the demonstration in the instant case because it contained an animated diagram of the infant brain. *Id.* Dr. Nakagawa's toy doll demonstration was not unfairly prejudicial.

The State laid a proper foundation to establish the relevancy of Dr. Nakagawa's shaken baby syndrome demonstration. This demonstration was neither misleading to the jury nor unfairly prejudicial to defendant. This argument is without merit.

### III.  Closing Arguments

[2]  In his second argument, defendant contends the trial court erred by overruling his objections to the prosecutors' closing arguments. We disagree.

The United States Constitution and the North Carolina Constitution grant a criminal defendant the right not to testify. U.S. Const. amend. V; N.C. Const. art. I § 23; *see State v. Mitchell*, 353 N.C. 309, 326, 543 S.E.2d 830, 840 (2001), *cert. denied*, 534 U.S. 1000, 151 L. Ed. 2d 389 (2001). The State "violates this rule if the language used was manifestly intended to be, or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *State v. Parker*, 185 N.C. App. 437, 444, 651 S.E.2d 377, 382 (internal quotations and citations omitted), *appeal dismissed and disc. review denied*, 362 N.C. 91, 657 S.E.2d 26 (2007). "However, in its closing argument, the State may properly bring to the jury's attention the failure of a defendant to produce exculpatory evidence or to contradict evidence presented by the State." *State v. Parker*, 350 N.C. 411, 431, 516 S.E.2d 106, 120 (1999) (citing *State v. Mason*, 317 N.C. 283, 287, 345 S.E.2d 195, 197 (1986)), *cert. denied*, 528 U.S. 1084, 145 L. Ed. 2d 681 (2000). Defendant preserved this issue by timely objection to both arguments at trial. We first review whether the prosecutors violated defendant's constitutional right not to testify. *State v. Walker*, 316 N.C. 33, 38, 340 S.E.2d 80, 82 (1986). If a violation occurred, then the burden is upon the State to demonstrate this violation was harmless beyond a reasonable doubt. N.C. Gen. Stat. § 15A-1443(b) (2007); *Mitchell*, 353 N.C. at 326, 543 S.E.2d at 841.

Defendant argues the prosecutor's statements regarding defendant's failure to present mental health evidence or a mental health defense violated his constitutional right not to testify.

Closing arguments must be viewed in context and in light of the overall factual circumstances to which they referred. *State v. Flowers*, 347 N.C. 1, 36, 489 S.E.2d 391, 412 (1997) (citation omitted), *cert. denied*, 522 U.S. 1135, 140 L. Ed. 2d 150 (1998). In the jury *voir dire*, defense counsel repeatedly questioned potential jurors if mental health evidence or a mental health defense would offend them. Defense counsel posed the question, "You will hear some evidence about the Defendant's mental capabilities, or lack thereof, would that prevent you from being fair and impartial and listening to all of the evidence?" In her opening statement, defense counsel referred to

defendant as "not only just young physically, but young socially, and emotionally, and to some extent limited educationally and mentally. A young man with a borderline IQ of 70."

At trial, no evidence was presented regarding defendant's mental health or limited cognitive abilities, and defendant did not present any evidence. In closing argument, the prosecutor stated, "[T]here is nothing to preclude the defense from putting on evidence, evidence like you heard in jury selection, you were going to hear that he was mentally retarded. See that's about broken promises. Broken promises from the defense."

We do not condone in any respect the State's use of the term "broken promises" in its closing argument.

Under the provisions of Rule 9 of the General Rules of Practice for the Superior and District Courts and N.C. Gen. Stat. § 15A-1221(a)(4), defendant can make an opening statement to the jury. "An opening statement is for the purpose of making a general forecast of the evidence . . . ." *State v. Mash*, 328 N.C. 61, 65, 399 S.E.2d 307, 310 (1991) (citation omitted). When defendant forecasts evidence in the opening statement, the State is permitted to comment upon the lack of evidence supporting such a forecast in closing argument. "Since the evidence did not support the facts contained in defendant's opening statement, it was not improper for the district attorney to highlight the absence of evidence." *State v. Harris*, 338 N.C. 211, 229, 449 S.E.2d 462, 471 (1994). The State's argument highlighted the total lack of evidence at trial supporting the forecast of evidence by defense counsel in the opening statement and was not a comment on the failure of the accused to testify. We further note that testimony concerning the defendant's mental retardation would necessarily require expert testimony, not the testimony of defendant. We find no constitutional violation and do not examine whether the statements were harmless beyond a reasonable doubt.

Defendant also argues the prosecutor's arguments regarding the failure to present an accident defense violated defendant's right not to testify because defendant was the only person who could testify that J.S.'s injuries were accidental. The State presented two expert witnesses at trial who testified that in their opinion J.S.'s injuries were not accidental. During closing arguments, the prosecutor argued to the jury;

[T]here has been a lack of evidence about this Defendant's mental health. And the reason that I bring this point up, Members of

the Jury, is that Judge Eagles is going to give us the law at the end of this case. She is not going to give you any type of mental health defense instruction. You cannot create a defense for the Defendant. You will not hear Judge Eagles say this Defendant was suffering from anything, you cannot—you will not hear Judge Eagles say that—anything about this Defendant mitigates this offense. You will not hear any defense about accident.

Accident is not an affirmative defense shifting the burden of proof to a defendant charged with murder. *State v. Jones*, 287 N.C. 84, 100, 214 S.E.2d 24, 35 (1975). Rather, the burden is on the State to prove the essential elements of murder including intent, thus disproving a defendant's assertion of accident. *Id.*

Our Supreme Court has repeatedly stated that "prosecutors 'may comment on a defendant's failure to produce witnesses or exculpatory evidence to contradict or refute evidence presented by the State.' " *State v. Barden*, 356 N.C. 316, 355, 572 S.E.2d 108, 133 (2002) (quoting *State v. Reid*, 334 N.C. 551, 555, 434 S.E.2d 193, 196 (1993)), *cert. denied*, 538 U.S. 1040, 155 L. Ed. 2d 1074 (2003). In *State v. Skeels*, the Supreme Court held, "[t]he prosecutor merely commented on the defendant's failure to present any evidence in his defense. As such, the prosecutor's comments were proper . . . ." *State v. Skeels*, 346 N.C. 147, 153, 484 S.E.2d 390, 393 (1997). The prosecutor's comments in this case were not directed toward defendant's failure to testify, but rather were directed to the lack of any mention of mental health or accident in the trial court's jury instructions. The prosecutor's argument was a request to the jury to follow the trial court's instructions, and not to create legal issues during their deliberations that were not part of the trial court's instructions. Defendant did not assign as error the trial court's failure to instruct the jury on accident. Defendant did assign as error the trial court's failure to instruct the jury on mental capacity; however, defendant does not argue these assignments of error in his brief, and they are thus deemed abandoned pursuant to Rule 28(b)(6) of the Rules of Appellate Procedure. N.C.R. App. P. 28(b)(6).

Defendant's argument is based largely upon the case of *State v. Baymon*, 336 N.C. 748, 446 S.E.2d 1 (1994). In that case, the prosecutor directly commented upon defendant's failure to testify: "We don't know how many times the child was . . . sexually [assaulted or abused]. . . . The defendant knows, but he's not going to tell you." *Id.* at 757, 446 S.E.2d at 6. In the instant case, there were no arguments

made by the prosecutors to the jury directly commenting on defendant's failure to testify. *Baymon* is not controlling in this case.

Even assuming *arguendo* that the prosecutor's statements somehow rose to the level of a constitutional violation, they were harmless beyond a reasonable doubt.

Prosecutors argued to the jury that the burden of proof was upon the State to show defendant's guilt. In addition, the trial court charged the jury upon the presumption of innocence and that the State had the burden of proving defendant's guilt beyond a reasonable doubt, both generally and specifically as to each charge. The trial court also charged the jury that defendant's failure to testify created no presumption against him. The jury is presumed to have followed the instructions of the trial court. *State v. Thornton*, 158 N.C. App. 645, 652, 582 S.E.2d 308, 312 (2003) (citations omitted).

The argument of the prosecutor did not implicate or violate defendant's constitutional right not to testify on his own behalf. This argument is without merit.

## IV. Separate Sentencing Proceeding

[3] In his third argument, defendant contends the trial court abused its discretion by not holding a separate sentencing proceeding for aggravating factors. We disagree.

North Carolina's Structured Sentencing Act states, "The jury impaneled for the trial of the felony may, in the same trial, also determine if one or more aggravating factors is present, unless the court determines that the interests of justice require that a separate sentencing proceeding be used to make that determination." N.C. Gen. Stat. § 15A-1340.16(a1) (2007)[1]. The decision to hold a separate proceeding is vested in the discretion of the trial court. Our standard of review for such a decision is abuse of discretion. *State v. Tucker*, 347 N.C. 235, 240, 490 S.E.2d 559, 561 (1997) (citations omitted), *cert. denied*, 523 U.S. 1061, 140 L. Ed. 2d 649 (1998). The trial court may only be reversed for an abuse of discretion upon a showing that its decision was so arbitrary that it could not have been the result of a reasoned decision. *State v. Morgan*, 183 N.C. App. 160, 168, 645 S.E.2d 93, 100 (2007) (citing *State v. Wilson*, 313 N.C. 516, 538, 330 S.E.2d 450, 465 (1985)), *appeal dismissed and disc. review denied*, 362 N.C. 241, 660 S.E.2d 536 (2008).

---

1. Section (d)(6a) of this statute was amended by the 2009 Session Laws; however, this amendment has no effect on the instant case. 2009 N.C. Sess. Laws 460.

**STATE v. ANDERSON**

[200 N.C. App. 216 (2009)]

After the State rested, defendant did not offer any evidence. The trial judge specifically asked defense counsel whether she had any additional evidence to offer pertaining to the aggravating factors, and counsel responded, "I wouldn't put on any evidence." There was thus no additional evidence to be offered at a separate sentencing proceeding for the aggravating factors. The trial court submitted the issues of guilty or not guilty, and the aggravating factors to the jury on the same verdict sheet.

Defendant argues this unfairly prejudiced him by inappropriately emphasizing the aggravating factors, which were not elements of the offenses. As to each charge, the trial judge instructed the jury that they were not to consider the aggravating factors unless they first found defendant guilty beyond a reasonable doubt of the substantive offense. In addition to the trial judge's verbal instructions, the individual verdict sheets for each charge contained written instructions stating that if the jury found defendant guilty of the particular offense, then the jury would consider the aggravating factors. Defendant fails to show how the trial court abused its discretion in not conducting a separate sentencing proceeding.

Defendant next argues that the procedures requiring bifurcated proceedings in capital sentencing and habitual felon cases provide proper guidance for the submission of aggravating factors pursuant to N.C. Gen. Stat. § 15A-1340.16(a1). In both capital sentencing and habitual felon cases, the applicable statues explicitly require the trial court to bifurcate the proceedings. N.C. Gen. Stat. §§ 15A-2000(a)(1), 14-7.6 (2007). The plain language of N.C. Gen. Stat. § 15A-1340.16(a1) vests the trial court with the discretion to bifurcate the felony offense proceeding from an aggravating factor determination in the interests of justice. N.C. Gen. Stat. § 15A-1340.16(a1) (2007).

Defendant fails to show how the trial court's decision not to require a separate proceeding amounted to an abuse of discretion. This argument is without merit.

NO ERROR.

Judges McGEE and JACKSON concur.