An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1198
NORTH CAROLINA COURT OF APPEALS

Filed: 6 May 2014

STATE OF NORTH CAROLINA

v.                                    Alamance County
                                      No. 11 CRS 56118
JONATHAN DONALD THOMPSON


Appeal by Defendant from judgment entered 26 April 2013 by Judge James E. Hardin, Jr. in Superior Court, Alamance County. Heard in the Court of Appeals 4 March 2014.

> *Attorney General Roy Cooper, by Special Deputy Attorney General Jennie Wilhelm Hauser, for the State.*

> *Appellate Defender Staples Hughes, by Assistant Appellate Defender Daniel Shatz, for Defendant.*


McGEE, Judge.


Jonathan Donald Thompson ("Defendant") was convicted on 26 April 2013 of first-degree sex offense with a child and taking indecent liberties with a child. The State's evidence tended to show that, on the evening of 6 September 2011 and into the early morning of 7 September 2011, Defendant was helping to paint the interior of his father's house in preparation for his father's

return from the hospital. Other people were helping to paint the house that evening, including a woman with a four-year-old daughter ("the child"). As Defendant and others painted the house, the child was asleep on blankets spread out on a hallway floor. Defendant was drinking beer and also took someone's prescription Klonopin without permission. Defendant and a friend ("the friend") continued to paint after the others had stopped. The friend testified Defendant left the room they were painting four or five times during the night, for about ten to fifteen minutes each time. One of the times Defendant left the room, the friend saw Defendant kneeling beside the child, facing the child.

The following morning, the child screamed from the bathroom. The child indicated that urinating was painful. At first, the child's mother assumed the pain was the result of a medical condition the child had that affected the child's vagina, and which could be exacerbated if the child did not maintain proper hygiene. The mother drew a bath for the child, but the child stated that she did not need a bath because Defendant was responsible for the pain. The child stated that Defendant had inserted his finger into her vagina.

The child's aunt, who was at the house, told the child's mother to take the child to be examined by a doctor. The child

was taken to Crossroads, a child advocacy center in Alamance County that provides medical, psychological, and other advocacy services. The child was then taken to UNC Hospital where a nurse attempted to collect evidence for a rape kit. Because the child was so upset, no internal genital swab was collected from the child. However, a swab was collected from the child's exterior vaginal region, in the hope of collecting skin cells transferred from the perpetrator. Though the swab sample was sent to the State Bureau of Investigation ("SBI"), it was ultimately returned without testing because the SBI did not have the proper facilities to collect DNA samples from any transferred skin cells. Visual examination of the child's genitals indicated redness and abrasions that were consistent with digital penetration.

The child returned to Crossroads on 15 September 2011, where Dr. Adrea Theodore ("Dr. Theodore"), who worked at Crossroads, interviewed and examined her. Dr. Theodore testified the child indicated Defendant had inserted his finger in her vagina six times, and the child said she could clearly recognize Defendant. The child said she could see paint on Defendant's fingers, and that Defendant had told her not to tell anyone. One of Defendant's sisters testified that when she spoke with Defendant on the evening of 7 September 2011,

Defendant cried and said he could not remember doing anything to the child, and that he didn't think he could do such a thing. The child's aunt testified the child had become "a totally different child" since the incident, and had become very shy when previously she had been outgoing.

Defendant was arrested and charged with first-degree sex offense with a child and taking indecent liberties with a child. Defendant was tried by a jury, and found guilty of both charges. Defendant appeals.

I.

In his first argument, Defendant contends the trial court committed plain error by not intervening *ex mero motu* to exclude testimony of one of the State's expert witnesses. We disagree.

> For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice — that, after examination of the entire record, the error "had a probable impact on the jury's finding that the defendant was guilty." [*See*] *Walker*, 316 N.C. at 39, 340 S.E.2d at 83 ([the defendant must show] "that absent the error the jury probably would have reached a different verdict"). Moreover, because plain error is to be "applied cautiously and only in the exceptional case," the error will often be one that "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings[.]"

*State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citations omitted).

Dr. Theodore testified, without objection, as an expert in pediatrics. Under cross-examination by Defendant's attorney, Dr. Theodore testified that Crossroads usually held a weekly "meeting where members of the Burlington Police and members of the Sheriff's Department, folks from DSS, people from the Crossroads staff, and people from the DA's Office attend" and "collaborate about the pending sexual assault cases in the county." Defendant's attorney then asked Dr. Theodore: "In the cases where you have given an opinion, each time, your opinion has been that what you saw was consistent with some form of sexual abuse. Is that correct?" Dr. Theodore responded that was true for every case that had gone to trial. On re-direct, the State asked: "Doctor Theodore, has the State ever prosecuted a sex offense case in which you formed an opinion that there wasn't sexual abuse?" Dr. Theodore responded that she was not aware of any such instance.

It is this last portion of testimony to which Defendant now objects. It is clear that on cross-examination, Defendant was attempting to attack Dr. Theodore's credibility by showing a bias in Dr. Theodore's testimony that favored the State. Though presumably attempting to rehabilitate the witness by its re-

direct, the State essentially asked Dr. Theodore the same question that had been posed by Defendant's attorney moments earlier. That question, and Dr. Theodore's response, could be seen as validating Defendant's suggestion that Dr. Theodore was biased in favor of the State and, therefore, was a less credible witness.

It is not clear to us that Dr. Theodore's testimony, even assuming *arguendo* it was improper, was more helpful to the State than to Defendant. Defendant fails in his burden of proving "'that absent the error the jury probably would have reached a different verdict.'" *Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334 (citation omitted). This argument is without merit.

## II.

In Defendant's second argument, he contends the trial court erred in failing to intervene *ex mero motu* to stop improper closing arguments by the State. We disagree.

> The standard of review for assessing alleged improper closing arguments that fail to provoke timely objection from opposing counsel is whether the remarks were so grossly improper that the trial court committed reversible error by failing to intervene *ex mero motu*. In other words, the reviewing court must determine whether the argument in question strayed far enough from the parameters of propriety that the trial court, in order to protect the rights of the parties and the sanctity of the proceedings, should have intervened on its own accord and: (1) precluded other similar remarks

from the offending attorney; and/or (2) instructed the jury to disregard the improper comments already made.

*State v. Jones*, 355 N.C. 117, 133, 558 S.E.2d 97, 107 (2002) (citation omitted). "When the defense fails to object to a prosecutor's argument, 'the remarks "must be gross indeed for this Court to hold that the trial court abused its discretion in not recognizing and correcting *ex mero motu* the comments regarded by defendant as offensive only on appeal."'" *State v. Cummings*, 352 N.C. 600, 621, 536 S.E.2d 36, 52 (2000) (citations omitted). "To determine the propriety of the prosecution's argument, the Court must review the argument in context and analyze the import of the argument within the trial context, including the evidence and all arguments of counsel." *Id*. at 621, 536 S.E.2d at 52 (citation omitted).

Defendant objects to several statements made in the State's closing argument. First, Defendant objects to an argument addressing the testimony of Dr. Theodore discussed in Defendant's first argument. The State argued, "if Doctor Theodore came to the State with any case, and said . . . nothing happened in my opinion, I would argue to you, the State would not prosecute a case like that. The State is not in the business of prosecuting people when it doesn't have any evidence of it." Defendant argues that the "clear message" of this

argument was "that Dr. Theodore believe[d] the crime occurred," because "if she did not think the crime occurred, the State would not have prosecuted [Defendant]." Dr. Theodore's testimony was that, in her opinion, the results of her examination of the child were consistent with the child's vagina having been digitally penetrated. The State's argument was that, had their expert witness' opinion been that no sexual abuse had occurred, the State would not have continued to prosecute the case. This is not the same as arguing that Dr. Theodore believed abuse occurred. When the State prosecutes a case, it is assumed the State believes it has sufficient evidence of the defendant's guilt to proceed. We do not find that these remarks "were so grossly improper that the trial court committed reversible error by failing to intervene *ex mero motu*." *Jones*, 355 N.C. at 133, 558 S.E.2d at 107 (citation omitted).

Second, Defendant objects to the following argument made by the State at closing: "[Y]ou heard in the opening statement from defense counsel that [] [D]efendant has maintained his innocence this whole time. But he also gave an hour and a half interview on DVD. Well, you didn't see that interview did you. He didn't keep his promise on that." Defendant's attorney gave the following statement in his opening argument:

> [Defendant] has maintained his innocence throughout this process. When he was contacted by the Burlington Police and they told him, we want to talk to you, he came in, and he gave an interview . . . for an hour and a half, subjected to all their questions. They recorded this interview, and they put it on DVD.

While we do not condone the depiction of the defense as not having kept a promise, *State v. Anderson*, 200 N.C. App. 216, 224, 684 S.E.2d 450, 456 (2009), Defendant's attorney did discuss the DVD interview in his opening statement, which could reasonably be construed as an indication that Defendant was planning to introduce Defendant's recorded statement in support of his assertion that he had maintained his innocence from the beginning.

> When defendant forecasts evidence in the opening statement, the State is permitted to comment upon the lack of evidence supporting such a forecast in closing argument. "Since the evidence did not support the facts contained in defendant's opening statement, it was not improper for the district attorney to highlight the absence of evidence."

*Id*. at 224, 684 S.E.2d at 456 (citation omitted). Defendant argues that the State was improperly making an argument that it knew to be false – that Defendant had not, in fact, maintained his innocence from the beginning. However, the DVD in question was never made part of the record, so there is no way for this Court to know what statements Defendant made in the recorded

interview. The challenged statement does not rise to the level of gross impropriety.

Finally, Defendant argues that the State, in its closing argument, improperly stated Defendant never requested additional testing of the DNA evidence. Specifically, Defendant objects to the italicized portion of the following statements:

> Everything the State gets in its file by law, we have to turn over to the defense, to the defendant. They have a right to see everything we have. No surprises in criminal law. You don't pull a rabbit out of the hat on somebody. They know what we have from the very beginning. They know, they did know, the defendant knew that swabs were taken in this case, and that they were sitting at the BPD or the SBI or somewhere, and there had been no results in this case.

> Listen to this, according to 15A-903, Subsection (d): The defendant shall have the right to inspect and copy or photograph any materials contained therein, talking about the discovery, and under appropriate safeguards to inspect, examine and test any physical evidence or sample contained therein.

> *If it was so important to the defense side, you think they may have had it tested? Because they didn't.* I asked Jody West if the State or the defense counsel recommend additional testing, and he said not that he was aware of it, and that's 'cause they didn't.* (Emphasis added).

"A prosecutor may argue to the jury the defendant's failure to produce exculpatory evidence or evidence which contradicts

the State's case." *State v. Hester*, 343 N.C. 266, 272, 470 S.E.2d 25, 29 (1996) (citation omitted).

However, Defendant contends the State's comments were improper because the State knew Defendant had requested DNA testing. The State obtained a vaginal swab taken from the child the day following the alleged assault. Special Agent Jody West ("Agent West") of the SBI, testified he obtained the swab, but returned it to the State after determining it was highly unlikely any DNA not belonging to the child would be recovered from the sample. This was because the amount of DNA left behind as a result of digital penetration of a vagina was too small to be detected by the procedures currently available to the SBI. Agent West testified that another procedure available to some local private testing facilities might have been able to detect foreign DNA from the sample if foreign DNA was present. Ultimately, no DNA testing was done on the sample.

At a pre-trial hearing, Defendant argued the "late disclosure of the DNA evidence specifically and the information that they were not going to test it is, it's prejudicial to the, to my client, considering the short timeframe." The following colloquy then occurred:

> THE COURT: So if the State had DNA evidence, what would you be asking me to do?

> MR. CONNOLLY [Defendant's attorney]: Your

Honor, I would ask Your Honor to allow the defendant to seek his own test of the DNA material.

THE COURT: And if the State doesn't have DNA evidence, what are you asking me to do?

. . . .

MR. CONNOLLY: Well, Your Honor, I believe that having someone from the SBI come in and testify about, about DNA, without ever having done a test on it, could be prejudicial and could unnecessarily influence the jury. I would ask you to exclude that expert witness.

There is no record evidence that Defendant ever asked for DNA testing to be done on the sample, or that Defendant recommended that the State do DNA testing on the sample. At the motions hearing, Defendant suggested DNA evidence could be exculpatory, and said he would have requested to submit the sample for his own testing "if the State had DNA evidence." However, the State did not have the swab tested for DNA evidence. Defendant's statement was that, in the absence of any State's evidence from DNA testing, Defendant would request that the State not be allowed to call an expert witness to testify about DNA evidence. The record discloses no instance where Defendant requested DNA testing.

Defendant fails to show that any of the State's closing arguments were so grossly improper that the trial court erred by

failing to intervene *ex mero motu*. This argument is without merit.

## III.

In Defendant's third argument, he contends the trial court erred in finding that Defendant had been convicted of an aggravated offense and in ordering lifetime sex offender registration and satellite-based monitoring. We agree.

We first note that Defendant failed to file a proper notice of appeal following the hearing to determine issues surrounding sex offender registration and satellite-based monitoring. Defendant filed a petition for writ of *certiorari* on 16 December 2013, requesting that this Court address Defendant's third argument despite the lack of a proper notice of appeal. We grant Defendant's petition for writ of *certiorari*, and address the merits of his argument.

Defendant was convicted of first-degree sexual offense with a child, N.C. Gen. Stat. § 14-27.4(a)(1), and taking indecent liberties with a child, N.C. Gen. Stat. § 14-202.1. As the State points out in its brief, neither of these convictions constitutes an "aggravated offense" as is required for ordering lifetime sex offender registration and lifetime satellite-based monitoring. *State v. Santos*, 210 N.C. App. 448, 454, 708 S.E.2d 208, 213 (2011); *State v. Davison*, 201 N.C. App. 354, 361-64,

689 S.E.2d 510, 515-17 (2009). The trial court erred by ordering lifetime sex offender registration and lifetime satellite-based monitoring. In the present case, as in *Santos*

> because the trial court made no determination as to the other statutory factors that might compel defendant's enrollment in satellite-based monitoring [or sex offender registration] for life, we remand for consideration of defendant's eligibility for satellite-based monitoring pursuant to any of the other categories described in N.C.G.S. § 14-208.40A[,] [and sex offender registration pursuant to N.C.G.S. § 14-208.6A].

*Santos*, 210 N.C. App. at 455, 708 S.E.2d at 213.

No error in part; reversed and remanded in part.

Judges STEELMAN and ERVIN concur.

Report per Rule 30(e).