STATE OF NORTH CAROLINA
v.
SUNNY JOHN CHUKWU

No. COA13-315

Filed 19 November 2013

1.  **Constitutional Law—due process—second competency hearing—failure to conduct sua sponte**

    The trial court did not violate defendant's due process rights in a heroin prosecution when it allowed his case to go to trial without *sua sponte* instituting a second competency hearing. The evidence presented did not raise a bona fide doubt about defendant's competency during trial and his competency was not temporal in nature.

2.  **Criminal Law—competency to stand trial—divergent behavior**

    The trial court did not err in a heroin prosecution by finding that defendant displayed a history of being lucid when at Central Regional Hospital yet delusional when he returned to Mecklenburg County. Given the reports of defendant's rational behavior while in the custody of Central Hospital and the divergent behavior displayed at trial, competent evidence supported the trial court's finding.

3.  **Criminal Law—competency to stand trial—cooperation with attorneys—findings**

    The trial court did not err in a heroin prosecution by finding that defendant refused to cooperate with his attorneys where those attorneys withdrew or moved to withdraw due to their inability to communicate with defendant, a psychologist's report indicated that defendant had a history of refusing to cooperate with his attorneys, and defendant noted at several points that he did not need or want an attorney.

4.  **Constitutional Law—competent representation—evidence sufficient**

    There was competent evidence in a heroin prosecution to support the trial court's finding that defendant's attorneys were competent to represent him. The record contained no evidence suggesting that defendant's attorneys were incompetent and contained evidence of competent representation when defendant allowed his attorneys to represent him. Although defendant argued that the record should have contained evidence supporting a volunteered statement by the judge about the attorney's competence, the finding

of competent representation would be supported by the record even without the volunteered statement.

**5. Criminal Law—judge's statements—findings rather than conclusions—evidence sufficient**

The trial court in a heroin prosecution correctly characterized its statements that defendant was malingering and attempting to delay and manipulate the system as findings rather than conclusions. Those findings were supported by competent evidence, although there was evidence to the contrary.

Appeal by Defendant from judgment entered 11 September 2012 by Judge Linwood O. Foust in Mecklenburg County Superior Court. Heard in the Court of Appeals 12 September 2013.

*Attorney General Roy Cooper, by Assistant Attorney General Matthew Tulchin, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Charlesena Elliot Walker for defendant-appellant.*

HUNTER Jr. Robert N., Judge.

Sunny John Chukwu ("Defendant") appeals from a judgment entered on 11 September 2012 in Mecklenburg County Superior Court. Defendant argues that the trial court violated due process by failing *sua sponte* to conduct a hearing concerning whether Defendant lacked the capacity to continue to trial. Defendant also argues that competent evidence did not support the trial court's findings of fact supporting the court's conclusion of law that Defendant was competent to cooperate with his attorneys and assist in his defense. After careful review, we find no error.

## I. Facts & Procedural History

Defendant was tried beginning on 10 September 2012 before a jury. Judge Linwood O. Foust presided in Mecklenburg County Superior Court. Defendant did not put on evidence at his trial. On 11 September 2012, the jury found Defendant guilty of two counts of trafficking in heroin and one count of possession of heroin with the intent to sell or deliver. The trial court sentenced Defendant to a term of 225 to 279 months in prison. Defendant gave oral notice of appeal. The State's evidence tended to show the following facts.

On 2 February 2009 Defendant arrived at Charlotte Douglas International Airport in Mecklenburg County after a three-day round trip to Costa Rica. Upon reentering the United States, Defendant presented himself to customs officials at the airport and was referred to a secondary processing area by United States Customs and Border Protection agents. Referrals to the secondary processing area are "generally [made] from the primary inspection area by a primary inspection officer who normally doesn't have enough time to make a determination whether or not to admit somebody into the United States or whether they need to have their baggage examined." In the secondary processing area, Defendant's luggage was inspected by Agent Thomas Weeks Jr. ("Agent Weeks"), a customs and border protection enforcement officer experienced and trained in identifying "high risk" travelers.

During the baggage inspection, Agent Weeks noticed that Defendant sweated "excessively," despite the fact that he was in an air-conditioned room in February. Agent Weeks described the room as so cold it was "not uncommon for officers even in the middle of August to be wearing heavy winter coats." Agent Weeks noticed Defendant "appeared to be uncomfortable walking," and Defendant walked with his toes pointed out to the sides rather than in front of him. Agent Weeks also stated that Defendant leaned forward on the bag belt and put all of his body weight on his hands when he watched Agent Weeks examine his bags. Further, Defendant told Agent Weeks he had purchased round trip tickets for his trip to Costa Rica only three days prior to departing and was abroad for only three days.

Based on his observations of Defendant, Agent Weeks requested and received permission from his supervisor to perform a "pat down" of Defendant. Agent Weeks testified that during the pat down, "I felt a hard bulge in his groin area when I went up the inside of his leg" and that it felt like "there was some kind of foreign object in his groin area." Agent Weeks pointed the bulge out to his supervisor who was in the room monitoring the pat down procedure.

Agent Weeks then requested and obtained permission from his supervisor to perform a partial body search. Agent Weeks removed Defendant's pants, thereafter finding that Defendant was wearing a pair of thermal underwear over an adult diaper. After Agent Weeks asked Defendant to remove the diaper, he discovered a clear plastic bag containing 30 white pellets.

Agent Weeks performed a narcotics field test on the pellets which showed the presence of heroin (a forensic lab test later confirmed the

pellets consisted of 295.45 grams of heroin). Agent Weeks also found "some cash in an envelope" among Defendant's belongings. After discovering the white pellets, Agent Weeks notified airport police, who arrested Defendant and transferred him to the Charlotte Mecklenburg Police Department for violating N.C. Gen. Stat. § 90-95(h)(4) (2011) by transporting a controlled substance.

After his arrest, the district court appointed Mr. John Ross ("Mr. Ross") as Defendant's counsel on 12 February 2009. On 16 February 2009, a grand jury indicted Defendant for two counts of trafficking in heroin and one count of possession of a controlled substance with the intent to sell or deliver. Mr. Ross made a motion questioning Defendant's capacity to proceed on 23 July 2009. Mr. Ross indicated that Defendant made statements that appeared to have no basis in fact or reality when he consulted with Defendant. Mr. Ross further noted that Defendant had refused to communicate with Mr. Ross.

Subsequently, North Carolina Certified Forensic Screener Jennifer Kuehn ("Ms. Kuehn") attempted to evaluate Defendant on 3 August 2009. Ms. Kuehn opined that Defendant required further evaluation to determine if he had the capacity to proceed. Ms. Kuehn made her recommendation because Defendant failed to cooperate with her evaluation, rendering it impossible for her to form an opinion concerning Defendant's capacity to stand trial. Ms. Kuehn concluded her report by recommending that Defendant undergo further evaluation at Dorothea Dix Hospital.

Ms. Chiege Okwara ("Ms. Okwara") was appointed Defendant's new counsel on 13 August 2009. Ms. Okwara used Ms. Kuehn's report to support a 15 September 2009 motion requesting that Defendant be committed to Dorothea Dix Hospital to determine whether Defendant was competent to stand trial. Mecklenburg County Superior Court Judge Eric Levinson granted Ms. Okwara's motion via a 15 September 2009 order. The scope of the examination order provided that Defendant should be examined to determine whether

> by reason of mental illness or defect the defendant is unable to understand the nature and object of the proceedings against the defendant, to comprehend his/her own situation in reference to the proceedings, and to assist in his/her defense in a rational or reasonable manner.

Dorothea Dix Senior Psychologist Dr. David Hattem ("Dr. Hattem") examined Defendant on 15 October 2009. During the examination and afterward, Defendant claimed he was a Nigerian diplomat who was

arrested in New York for a probation violation. Defendant also stated that he was a "Ph.D. in school psychology with an emphasis on problem solving," and that he worked as a consultant to the "Federal Ministry of Foreign Affairs" in Abuja, Nigeria. Dr. Hattem opined that Defendant displayed confusion about his charges and delusional ideas about his attorneys, which impaired his ability to assist his defense in a rational or reasonable manner. Dr. Hattem rendered his opinion in a report dated 4 November 2009, concluding that Defendant lacked the mental capacity to proceed:

> In my opinion Mr. Chukwu lacks capacity to proceed at this time. He displayed confusion about his charges that impaired his rational understanding of his position. His confusion about his charges, and delusional ideas about his attorneys, impaired his ability to assist his defense in a rational or reasonable manner.

On 29 January 2010, the trial court found Defendant was incapable to proceed and committed Defendant to Broughton Hospital. After further examination, Defendant's psychiatrist at Broughton concluded that Defendant was fabricating stories inconsistent with the facts. Defendant's psychiatrist also found Defendant was not delusional. The psychiatrist at Broughton noted two items in particular: Defendant did not require psychiatric medication and Defendant declined offers to help resolve his legal situation by contacting the Nigerian embassy. Defendant's final diagnosis at Broughton was "malingering psychosis," and Defendant was discharged on 11 February 2010 and returned to jail.

Defendant was reexamined by Dr. Hattem on 7 October 2010 and 8 December 2010. Dr. Hattem received the preceding records and evaluations from Broughton Hospital as well as documents from the Mecklenburg County District Attorney's office, which were not available to him previously. These included a Nigerian Passport, a Texas ID card, a Resident Alien Card, and a Social Security card found on Defendant when arrested. When Dr. Hattem showed Defendant these documents during his examination, Dr. Hattem noted Defendant's reaction as follows:

> [Defendant] inspected [the documents] carefully, then responded, "this is not me." He noted the name "Sunny John Chukwu" was on all of the documents. He asserted that his name was "Sunny Chukwu" and not "Sunny John Chukwu." He signed the name "Sunny Chukwu" under the copy of the passport. . . . He was told that a color photo

of the passport showed it to be green; he responded that this passport was "not a diplomatic passport" and reiterated "mine is red." He pointed out the date of birth on the passport and Texas ID card was different from his professed date of birth. He asserted these identification documents belonged to someone else, and were not the documents taken from him on arrest.

Dr. Hattem opined in his 4 February 2011 report that Defendant did not suffer from a mental disease or defect that rendered him incapable of proceeding and that Defendant did not suffer from delusions. Dr. Hattem noted that Defendant understood he was facing "drug charges." Dr. Hattem also noted that "[p]ersons who hold delusional beliefs will typically react to a credible challenge with escalating suspiciousness, escalating hostility, increasingly far fetched assertions, and disorganized thinking. Mr. Chukwu showed none of these responses. Instead, his responses were consistently rational, well organized and plausible." As a result of his observations, Dr. Hattem opined that Defendant was not delusional about his identity, that Defendant "demonstrated more than adequate factual understanding of the nature and object of the proceedings," that Defendant understood the charges that had been lodged against him, that Defendant could work rationally and reasonably in his defense, and ultimately that Defendant had the capacity to proceed to trial.

On 1 April 2011, Superior Court Judge Hugh B. Lewis of Mecklenburg County conducted a competency hearing. At this hearing, the court concluded that Defendant was "faking his disabilities to avoid facing the consequences of the court system." The court concluded that Defendant was competent to stand trial. This 1 April 2011 competency hearing was approximately seventeen months before Defendant's 9 September 2012 trial.

On 27 May 2011, Defendant appeared before Judge Lewis again in connection with his second attorney's motion to withdraw as counsel. At this hearing, Ms. Okwara indicated that a plea offer was on the table which included a sentence of 58 to 79 months and the dismissal of two counts of Level 3 trafficking. Ms. Okwara testified that she advised Defendant if he rejected the plea, he faced a sentence of 225 months to 279 months on each count of trafficking, plus a $500,000 fine, and could risk receiving multiple consecutive sentences. Ms. Okwara averred that she could not communicate with Defendant, and that the only response she received from Defendant was that "God is in control" or that "glory be to God." During this hearing, the following colloquy occurred:

The Court: Okay. Mr. Chukwu, do you wish to be heard in any way? Do you wish to be heard?

[Defendant]: Sir?

The Court: Do you wish to make any statements or be heard?

[Defendant]: Sir, I — I (inaudible). I still maintain that I don't need an attorney.

The Court: You do not need an attorney?

[Defendant]: For probation violation.

The Court: And do you wish to waive your rights for an attorney and represent yourself?

. . . .

[Defendant]: Well, the lady (inaudible).

The Court: I'm sorry?

[Defendant]: Whatever the court decides.

The Court: No, sir. You have to make your own decision of your own personal waiver. Do you wish to waive the right to an attorney because it's your constitutional right? Do you wish to waive that right and represent yourself?

[Defendant]: Yes, sir.

The Court: Please have the gentleman sign the waiver.

[Defendant]: I do not agree with this statement, sir.

The Court: So therefore you do not wish to waive your right to an attorney and represent yourself?

[Defendant]: Yes, sir.

The court then made findings of fact that (1) Defendant displayed a history of being lucid when he was at Central Regional Hospital, yet delusional when he returned to court in Mecklenburg County; (2) Defendant refused to cooperate with his attorneys; (3) both of Defendant's attorneys were experienced and able to represent Defendant; and (4) Defendant's actions were an "attempt to delay and mire the Court down to avoid going forward with his case." The court found Defendant was "malingering and attempting to manipulate the system." The trial court then

appointed Ms. Okwara as Defendant's standby counsel. Ms. Okwara later filed a second motion to withdraw as counsel, which the trial court granted on 27 October 2011.

On 20 December 2011, Mr. Christopher Sanders ("Mr. Sanders") was appointed to represent Defendant. On 24 August 2012, Mr. Sanders made a motion to withdraw as counsel and in support thereof he stated that the only meaningful communication he had had with Defendant were statements by Defendant that "God is in control" and "Glory be to God." Mr. Sanders represented that Defendant "refuse[d] or [chose] not to communicate" with him concerning the case. The court denied the motion to withdraw, so Mr. Sanders represented Defendant at trial.

Both the State and Defendant's counsel remarked that the trial itself was brief. Defendant did not testify nor did Defendant present evidence. The State called three witnesses: Agent Weeks, airport police officer Robert Spencer, and Charlotte Mecklenburg Police Department crime lab analyst Ann Charlesworth. After hearing all of the evidence, the jury returned unanimous verdicts finding Defendant guilty of two counts of trafficking in heroin by transportation and possession with intent to sell or deliver heroin. The trial court sentenced Defendant to a term of 225 to 279 months in prison. Defendant was given credit for 1,317 days spent in confinement prior to the entry of judgment.

## II. Jurisdiction & Standard of Review

As Defendant appeals from the final judgment of a superior court, an appeal lies of right to this Court pursuant to N.C. Gen. Stat. § 7A-27(b) (2011).

Defendant raises two issues on appeal. The first issue is whether the court improperly failed to institute, *sua sponte*, a second competency hearing during the trial when Defendant exhibited irrational conduct. This issue is a question of law, and is reviewed de novo. "Conclusions of law are reviewed de novo and are subject to full review." *State v. Biber*, 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011); *see also Carolina Power & Light Co. v. City of Asheville*, 358 N.C. 512, 517, 597 S.E.2d 717, 721 (2004) ("Conclusions of law drawn by the trial court from its findings of fact are reviewable de novo on appeal.").

Defendant's second issue on appeal is whether the findings of fact supporting the trial court's order to allow Defendant's case to proceed to trial were supported by competent evidence. If the trial court's findings of fact regarding a defendant's competency are supported by competent evidence, they are deemed conclusive on appeal. *State v. Heptinstall,*

309 N.C. 231, 234, 306 S.E.2d 109, 111 (1983). "Competent evidence is evidence that a reasonable mind might accept as adequate to support the finding." *Eley v. Mid/East Acceptance Corp. of N.C., Inc.*, 171 N.C. App. 368, 369, 614 S.E.2d 555, 558 (2005) (citation and quotation marks omitted).

Defendant argues that competent evidence does not support the trial court's findings that: (i) Defendant displayed a history of being lucid while at Central Regional Hospital and delusional when he returned to Mecklenburg County; (ii) Defendant refused to cooperate with his attorneys; (iii) both of Defendant's attorneys were competent and had the ability to represent him; and (iv) Defendant's actions constituted malingering, an attempt to delay and mire down the court, and an attempt to manipulate the system.

### III. Analysis

#### A. *Sua Sponte* Competency Hearing

**[1]** Defendant first argues that the trial court violated his due process rights when it allowed his case to proceed to trial without sua sponte instituting a second competency hearing. We disagree.

"[A] trial court has a constitutional duty to institute, *sua sponte*, a competency hearing *if there is substantial evidence before the court* indicating that the accused may be mentally incompetent." *State v. McRae*, 139 N.C. App. 387, 390, 533 S.E.2d 557, 559 (2000) (internal quotation marks and citation omitted). " 'The conviction of an accused person while he is legally incompetent violates due process.' " *State v. Coley*, 193 N.C. App. 458, 461, 668 S.E.2d 46, 49 (2008), *aff'd*, 363 N.C. 622, 683 S.E.2d 208 (2009) (quoting *State v. Taylor*, 298 N.C. 405, 410, 259 S.E.2d 502, 505 (1979)). In addition to constitutional guarantees, North Carolina's General Statutes also provide that only competent defendants may stand trial:

> No person may be tried, convicted, sentenced, or punished for a crime when by reason of mental illness or defect he is *unable to understand the nature and object of the proceedings against him, to comprehend his own situation in reference to the proceedings, or to assist in his defense in a rational or reasonable manner.*

N.C. Gen. Stat. § 15A-1001(a) (2011) (emphasis added). The State, a defendant, a defense counsel, or the trial court may move for a competency determination. N.C. Gen. Stat. § 15A-1002(a) (2011). If raised by

any party, the trial court has a statutory duty to hold a hearing to resolve questions of competency. N.C. Gen. Stat. § 15A-1002(b).

Trial courts have a " 'constitutional duty to institute, *sua sponte,* a competency hearing *if there is substantial evidence before the court* indicating that the accused may be mentally incompetent.' " *Coley,* 193 N.C. App. at 464, 668 S.E.2d at 51 (quoting *State v. Young,* 291 N.C. 562, 568, 231 S.E.2d 577, 581 (1977)). On review, this Court "must carefully evaluate the facts in each case in determining whether to reverse a trial judge for failure to conduct *sua sponte* a competency hearing where the discretion of the trial judge, as to the conduct of the hearing and as to the ultimate ruling on the issue, is manifest." *State v. Staten,* 172 N.C. App. 673, 682, 616 S.E.2d 650, 657 (2005). Further:

> Evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant to a *bona fide doubt inquiry.* There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated.

*Id.* at 678–79, 616 S.E.2d at 655 (internal quotation marks and citations omitted) (emphasis added). While the trial court's finding of competency receives deference, other "findings and expressions of concern about the temporal nature of [a] defendant's competency" may raise a bona fide doubt as to a defendant's competency. *McRae,* 139 N.C. App. at 391, 533 S.E.2d at 560. We thus review the record to determine (i) whether there is a bona fide doubt as to Defendant's competency and (ii) whether Defendant's competency was temporal in nature.

The appropriate test for evaluating defendant's competency to stand trial is "whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him." *State v. Badgett,* 361 N.C. 234, 259, 644 S.E.2d 206, 221 (2007) (internal quotation marks and citations omitted). A defendant need not "be at the highest stage of mental alertness to be competent to be tried." *State v. Shytle,* 323 N.C. 684, 689, 374 S.E.2d 573, 575 (1989). "So long as a defendant can confer with his or her attorney so that the attorney may interpose any available defenses for him or her, the defendant is able to assist his or her defense in a rational manner." *Id.*

*Coley* provides an example of this Court applying the test under similar facts. In *Coley*, the defendant argued that regardless of his competence at a prior hearing, his testimony at trial demonstrated that he did not possess the capacity to proceed to trial. 193 N.C. App. at 464, 668 S.E.2d at 51. At trial, the defendant "appeared to ramble in response to questions imposed by counsel." *Id.* However, such behavior was "not a new occurrence, and had been present during defendant's examinations prior to the preliminary hearing." *Id.* This Court, finding no error, held "[t]he fact, by itself, that defendant continued this behavior at trial, did not amount to substantial evidence that defendant was mentally incompetent at trial." *Id.*

Here the record demonstrates Defendant's competency to stand trial and an unwillingness to cooperate with his attorneys and attending psychiatrists. Defendant's first attorney, Mr. Ross, requested a forensic examination in July 2009, primarily due to Defendant's refusal to communicate with Mr. Ross. Defendant thereafter refused to cooperate with the forensic examiner. Dr. Hattem evaluated Defendant in October 2009, finding Defendant incompetent to proceed due to confusion about his charges and delusions regarding his attorneys. Defendant was then committed to Broughton Hospital for two weeks, where he was treated solely for medical conditions before being released after his psychiatrist found Defendant was malingering by fashioning stories to avoid legal consequences. Defendant stated that he understood the nature of the "drug charges" against him while at Broughton and when examined by Dr. Hattem.

Defendant indicated distrust for his attorney, Ms. Okwara, at his October 2010 evaluation, stating that she was pursuing a "hidden agenda." Defendant also claimed that he was charged with a "probation violation" and made statements that he was a Nigerian diplomat. Despite Defendant's statements, Dr. Hattem concluded that Defendant did not suffer from a mental disease or defect that could cause him to be incapable of proceeding and that Defendant did not suffer from delusions. Dr. Hattem concluded that Defendant was capable of working rationally and reasonably with his counsel, but was inventing stories to avoid prosecution. In his 4 February 2011 report, Dr. Hattem stated that "[a]lthough he continues to express distrust of his attorney, he no longer asserted that he does not need an attorney, and he clearly demonstrated an understanding of the importance of adequate representation." Dr. Hattem also found that Defendant "demonstrated that he is capable of working rationally and reasonably in his own defense." In light of this evidence, we agree with the trial court's finding that Defendant "possessed the

capacity to (1) comprehend his position, (2) understand the nature of the proceedings against him, (3) conduct his defense in a rational manner, and (4) cooperate with his counsel." *Id.* at 464, 668 S.E.2d at 50–51. Thus, the record and testimony presented do not indicate a need for a *sua sponte* second competency hearing.

The record also shows no cause for concern regarding the "temporal nature" of Defendant's mental condition. In *McRae*, this Court found the temporal nature of a competency finding to be relevant, as there were "*numerous psychiatric evaluations*" of the defendant's competency "that were *conducted before trial with various findings and expressions of concern about the temporal nature of defendant's competency*" which raised a bona fide doubt as to the defendant's competency. 139 N.C. App. at 391, 533 S.E.2d at 560 (emphasis added) (discussing six different findings by psychiatrists finding defendant competent at times and incompetent at others); *see also Meeks v. Smith*, 512 F. Supp. 335, 338 (W.D.N.C. 1981) (finding a bona fide doubt existed regarding a defendant's competency because defendant was diagnosed as schizophrenic and underwent seven psychiatric evaluations that yielded different conclusions as to his competency to stand trial).

Here, based on his initial observations of Defendant's confusion about the charges against him and his distrust of his attorneys, Dr. Hattem concluded that Defendant was not capable of proceeding. However, Dr. Hattem adjusted his diagnosis after gathering additional evidence, concluding Defendant was competent to proceed and did not suffer from delusions as originally thought. Dr. Hattem also stated that during his initial evaluation of Defendant in November 2009, Defendant did not exhibit any symptoms of mental illness, that Defendant had no symptoms prior to arrest, and that the origin of the recent onset of symptoms was unclear.

Here there were minimal competency concerns and no findings by any of the examining psychiatrists that Defendant's competency was temporary. *Cf. McRae*, 139 N.C. App. at 389–91, 533 S.E.2d at 559–60 (discussing the temporary nature of the defendant's competency and his dependence on medication to attain competency). Defendant displayed consistent behavior in asserting that he was a Nigerian diplomat, that he was being charged for a "probation violation," and that he did not wish to have counsel. The singular item of concern regarding competency was the initial evaluation by Dr. Hattem, which he later changed. In *McRae*, on the other hand, the court's findings of fact showed the existence of a variety of opinions concerning the defendant's competency

and its temporal relation to medication taken by the defendant. *See id.* Thus, Defendant's competency was not temporal.

Because (i) the evidence presented does not raise a bona fide doubt about Defendant's competency during the trial and (ii) Defendant's competency was not temporal in nature, we hold that the trial court did not err when it did not commence a second competency hearing *sua sponte.*

## B. Findings of Fact

Defendant challenges four of the trial court's findings of fact, arguing that they are not supported by competent evidence. After careful review, we find no error.

### i. Lucid Intervals

[2] Defendant argues the trial court erred by finding Defendant displayed a history of being lucid when at Central Regional Hospital, yet delusional when he returned to Mecklenburg County. We disagree.

A defendant can appear completely lucid and competent at some intervals, yet not at others. *See State v. Whitted*, 209 N.C. App. 522, 528–29, 705 S.E.2d 787, 791–92 (2011). Prior to the 27 May 2011 hearing before Judge Hugh Lewis, Defendant was committed to Broughton Hospital on 29 January 2010. At Broughton, Defendant did not exhibit signs of mental illness and was not prescribed medications for mental illness. The State's psychiatrist concluded that Defendant was manufacturing a story which was not consistent with the facts and was "not actually delusional." The psychiatrist also reported that Defendant "understood he was later charged with 'stolen passport, armed robbery, and recently drug charges.' " Likewise, when Dr. Hattem examined Defendant at Central Regional Hospital on 7 October 2010, there were no signs of mental illness or delusions.

At the 1 April 2011 hearing, Judge Lewis asked whether Defendant understood the charges against him and Defendant replied that he did not understand the charges and believed he was "arrested for probation violation." Defendant also continued to insist that he was a "diplomatic consultant" employed by the Nigerian government, similar to statements Defendant had previously made to the forensic examiner. Judge Lewis, after engaging in discussion about Defendant's diplomatic activities, provided an explanation of the competency requirement in layman's terms for Defendant:

> The Court: Okay. Well, competency to stand trial means that you understand what's going on, okay? And you're

able to help your attorney with your defense, all right? I determine that you are not able to understand what's going on here, and you cannot help your attorney, then I deem that you are incompetent to stand trial. That means that you do not have the capacity to stand before me either before me and enter a plea or go to trial for a jury to find whether or not you're innocent or guilty. And if I find that you're incompetent, what I will do is send you back to the hospital where you will stay there under the treatment of physicians and with medication until you become competent so that you understand what's going on. Does that explain it to you?

[Defendant]: Yes, Your Honor.

The Court: Okay. And do you understand that?

[Defendant]: I don't fully understand, Your Honor. Because I recall on January 29th, 2010 I was sent down to Broughton Hospital in Morganton.

The Court: Um-hum.

[Defendant]: And I was there for 13 days precisely.

THE COURT: Um-hum.

The Court: And I was there for treatment. And they were not giving me any treatment except the words I'm receiving right at the Mecklenburg County jail. Except there was in windows and (inaudible) that trying to get me to sign a plea to what I do not know. That continued on till they decided do like this -- they have to send me to a special counsel. I said, I don't need any counsel. I've told you that before. I told them I don't need a counsel. My medications — I listed all my medications to them, and they were giving me the same medication that I was receiving right at Mecklenburg County Jail. They decided on their own to send me back on the 11th of February, 2010.

The Court: But you were clear enough to know that you didn't wish to enter a plea; is that correct? You were clear enough to understand you didn't want to enter a plea; is that correct?

[Defendant]: What -- what —

STATE v. CHUKWU

[230 N.C. App. 553 (2013)]

The Court: You just told me that the attorneys were trying to trick you into signing a paper that would indicate that you were pleading, and you knew that you did not want to do that; is that correct?

[Defendant]: Yes, Your Honor.

The court then found Defendant was competent to proceed based on the conversations with Defendant and the reports of Defendant's psychiatrists. Ms. Okwara then requested and received a continuance of Defendant's trial date so she could advise Defendant of his options for a plea arrangement. Defendant responded to Ms. Okwara by stating "Glory be to God." At Defendant's 27 May 2011 trial date, Defendant continued to insist that he did not want an attorney for his "probation violation." After the court asked Defendant to sign a waiver of his right to counsel, Defendant stated he did not agree with the waiver. The court then made its finding that Defendant was lucid while at Central Hospital, yet delusional when he returned to Mecklenburg County to stand trial.

The preceding evidence provides ample support for Judge Lewis's decision. Defendant was found competent via two separate examinations by psychiatrists. Defendant stated that he understood the charges against him, then denied that he understood. Defendant requested a waiver of counsel, then refused to sign a form verifying his waiver. Defendant testified that a plea was offered, but he chose not to accept it. Given the reports of Defendant's rational behavior while in the custody of Central Hospital and the divergent behavior displayed at trial, we conclude competent evidence supported the trial court's finding of fact.

### ii. Cooperation with Attorneys

[3] Defendant next argues that competent evidence did not support the trial court's finding of fact that Defendant refused to cooperate with his two attorneys. We disagree.

Defendant's first attorney was Mr. Ross. Mr. Ross was allowed to withdraw from the case because he was not able to communicate effectively with Defendant. At the 27 May 2011 hearing, Ms. Okwara made a motion to withdraw, noting that Defendant's most meaningful communications with her were his statements that "God is in control" or "Glory be to God." Ms. Okwara testified that she made several attempts to discuss possible pleas Defendant could enter to receive a reduced sentence. After sending several letters and reaching out to Defendant to advise him of how he could receive a reduced sentence,

Defendant's response continued to be that "God is in control" or "Glory be to God." Ms. Okwara stated:

> I can't continue to represent a client I cannot communicate with. He's looking at a substantial amount of time, and I just – I cannot proceed further on this case.
>
> We've never had any meaningful discussions, and my conscience will not allow me to continue to represent him. I've been in this case now almost 20 months – 21 months, and we're no further along than we were when I got the case in August, 2009.

Dr. Hattem's 4 February 2011 report also indicates that Defendant had a history of refusing to cooperate with his attorneys and medical staff. Defendant noted at several points that he did not need or want counsel. Defendant also stated in these examinations that Ms. Okwara had a "hidden agenda" and that he distrusted his attorneys. In light of this testimony and conduct we hold competent evidence existed showing Defendant refused to cooperate with his attorneys.

### iii.  Attorney Competency

[4]  Defendant argues that there was not competent evidence supporting the trial court's finding that Defendant's attorneys were competent to represent him. We disagree.

"Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation." N.C. Admin. Code tit. 27, r. 1.01 (August 2013). The record contains no evidence to suggest Defendant's attorneys were incompetent, and instead contains evidence showing competent representation by Defendant's attorneys when Defendant allowed them to interact with him. For example, during the 27 May 2011 hearing, the trial court considered evidence that Defendant's attorney at the time, Ms. Okwara, had obtained a plea offer from the State and advised her client to accept the offer. Ms. Okwara had obtained a plea offer that she testified would have reduced Defendant's sentence to "58 months to 79 months" and resulted in the dismissal of two charges of Level 3 trafficking. Defendant was notified by Ms. Okwara that "he faces a sentence of 225 months to 279 months on each count of trafficking, plus a $500,000 fine and could also receive a consecutive sentence on the plea." Ms. Okwara's communication with her client concerning strategies to reduce the length of his sentence provide an example of competent advice that would meet the standard required of counsel.

Lastly, Judge Lewis, in making his finding stated "[t]his Court has had the opportunity to observe in the practice of law over the last 15 years as a jurist and deems both of them to be competent and have the ability to represent the defendant." Judge Lewis's statements regarding his experience represent a volunteered statement that preceded his ultimate finding of fact: that Defendant received competent legal advice during the proceedings. Even without the statement by Judge Lewis, the finding of fact would still be supported by the record and would stand by itself. We therefore find Defendant's argument that the record should contain evidence concerning Judge Lewis's experience to be without merit. Accordingly, we find competent evidence exists to support the trial court's finding of fact that Defendant's counsel was competent.

### iv. Delay and Malingering

[5] Defendant last argues that the trial court's findings of fact that Defendant's actions were "simply an act of attempt to delay and mire the Court down to avoid going forward with his case" and that he was "malingering and attempting to manipulate the system" were actually conclusions of law. We disagree.

In distinguishing between findings of fact and conclusions of law, generally, "any determination requiring the exercise of judgment or the application of legal principles is more properly classified as a conclusion of law." *State v. Sparks*, 362 N.C. 181, 185, 657 S.E.2d 655, 658 (2008) (internal quotation marks and citations omitted).

A trial court's findings that a defendant is attempting to delay a case and mire down the court, and that a defendant is malingering and manipulating the system are properly considered findings of fact. *See, e.g., State v. Tucker*, 347 N.C. 235, 241–42, 490 S.E.2d 559, 562 (1997) (trial court's finding of competency supported by testimony that defendant was malingering); *Cannizzaro v. Food Lion*, 198 N.C. App. 660, 664, 680 S.E.2d 265, 268 (2009) (upholding a finding of fact made by the Industrial Commission that plaintiff was not malingering); *State v. Mahatha*, 157 N.C. App. 183, 199, 578 S.E.2d 617, 627 (2003) (upholding a finding of fact that defendant was malingering). The trial court was correct in characterizing these statements as findings of fact, making the appropriate inquiry whether there was competent evidence before the trial court to support these findings of fact. *Heptinstall*, 309 N.C. at 234, 306 S.E.2d at 111.

*Tucker* is instructive in determining whether competent evidence existed to support Judge Lewis's findings. In *Tucker*, the defendant argued that the trial court erred by finding him capable of proceeding to trial. 347 N.C. at 241, 490 S.E.2d at 562. The defendant was examined

by three physicians multiple times. *Id.* Eventually the defendant's attending physician at Dorothea Dix Hospital diagnosed him with antisocial personality disorder and suspected that he was malingering. *Id.* A staff psychologist at Dorothea Dix also found the defendant to not appear psychotic, but to be malingering to avoid prosecution. *Id.* During his final evaluation, a third physician found the defendant not competent to stand trial, but stated that it was "possible that he was malingering." *Id.* Defendant's examining physician testified, based on an eight-day examination at Dorothea Dix Hospital, review of jail records, review of a hearing record, and other psychological testing results that the defendant was competent and malingering. *Id.* at 243, 490 S.E.2d at 562. Thus, there was conflicting evidence over whether the defendant in *Tucker* was malingering. This Court found the preceding facts provided competent evidence to support a finding that the defendant was competent to stand trial. *Id.*

As in *Tucker,* conflicting opinions exist here concerning whether Defendant was malingering. Notably, on 11 February 2010, Defendant received a diagnosis of "malingering psychosis" and was discharged from Broughton Hospital. However, Dr. Hattem, in his 4 February 2011 report, opined that Defendant did not suffer from "malingering psychosis" because "manufacturing a story" about his identity to evade prosecution "is not malingering because it is not an attempt to portray symptoms of mental illness."

"When the trial court, without a jury, determines a defendant's capacity to proceed to trial, it is the court's duty to resolve conflicts in the evidence; the court's findings of fact are conclusive on appeal if there is competent evidence to support them, even if there is also evidence to the contrary." *Heptinstall,* 309 N.C. at 234, 306 S.E.2d at 111. As in *Tucker,* the trial court here found Defendant was malingering and thus competent to stand trial based on the available evidence, despite evidentiary conflicts. We agree that competent evidence supports a finding of fact that Defendant was "malingering and attempting to manipulate the system" and find no error.

## IV. Conclusion

Based on the foregoing discussion, we find the trial court did not err in determining Defendant competent to proceed, nor in making its underlying findings of fact used to arrive at that result.

NO ERROR.

Judges ERVIN and DAVIS concur.