IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA19-24

 Filed: 1 October 2019

Vance County, No. 07 CRS 50717, 50725

STATE OF NORTH CAROLINA

 v.

RODNEY MCDONALD WILLIAMS

 Appeal by defendant from judgments entered 13 June 2018 by Judge Henry W.

Hight Jr. in Vance County Superior Court. Heard in the Court of Appeals 4

September 2019.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General M.A.
 Kelly Chambers, for the State.

 Marilyn G. Ozer for defendant-appellant.

 TYSON, Judge.

 Rodney McDonald Williams (“Defendant”) appeals from judgments entered

after a jury’s verdict found him guilty of first degree murder and guilty of attempted

murder. We find no error.

 I. Background

 Ms. Shirley Venable (“Venable”) was awakened to someone calling her name

outside her home during the early morning of 27 February 2007. Venable testified

she heard Defendant say “Ma, open the door.” Venable is Defendant’s mother. When
 STATE V. WILLIAMS

 Opinion of the Court

Venable opened her door, a friend, Leo Ziegler, Jr., (“Ziegler”) ran inside her house.

Defendant stood at the doorway and began firing a handgun. Venable was shot in

her left side and Ziegler was shot in the chest.

 Venable and Ziegler attempted to flee through the house, but Venable was shot

again in her left hip and Ziegler was shot in the back of his head. Ziegler’s head

wound was fatal. After Venable was shot in her hip and fell to the floor, Defendant

shot Venable a final time in her right leg. Venable was able to wrestle the gun from

Defendant.

 Defendant fled Venable’s home. First responders arrived and found Venable

covered in blood at her backdoor and Ziegler’s body in the kitchen. Officers found

Defendant hiding under a nearby automobile and arrested him.

 On 1 March 2007, the trial court determined Defendant needed emergency

medical care for mental illness and issued a safekeeping order. On 12 March 2007,

Defendant was indicted on one count of first degree murder of Ziegler and one count

of attempted murder of Venable.

 A. Dr. Williams’ Evaluation

 Dr. Alton Williams (“Dr. Williams”), (no relation to Defendant), first

interviewed Defendant on 3 July 2007. Dr. Williams conducted follow up interviews

with Defendant on 7 January 2008 and 10 April 2008. In preparing his report, Dr.

Williams also reviewed 190 documents related to Defendant. During these

 -2-
 STATE V. WILLIAMS

 Opinion of the Court

interviews, Defendant told Dr. Williams he considered deceased Ethiopian leader,

Haile Selassie, to be a god and Defendant wanted to be his right-hand-man.

Defendant insisted his deceased father had connections to rap music artists and

producers. He also discussed his imaginary girlfriend, Champagne.

 When Dr. Williams inquired about the pending charges, Defendant stated the

worst outcome of his case would be the death penalty, but because of his pending tort

claim he would not receive a death sentence because it was an act of Congress.

Defendant explained the current charges were a prerequisite for him to prevail in the

tort claim. Defendant stated he would be receiving his money from his tort claim any

day and would be going home.

 Dr. Williams reported Defendant began using marijuana at age 16, smoking

six to seven “blunts” daily. Defendant “first used alcohol at seven or eight years old,

but became a regular drinker when he was 16 years old.” Defendant reported he

would drink “four to five 40 ounce beers a day.” Defendant self-reported he used crack

cocaine twice a week from 2005 through his arrest.

 Defendant testified that while incarcerated for a prior conviction, he purchased

a state tort claim for $5.00 from another inmate named Lock Jordan. Defendant

asserted his tort claim was against the State, but required federal government

assistance to succeed on his claim. Defendant also stated he received money from a

rap music “record deal.”

 -3-
 STATE V. WILLIAMS

 Opinion of the Court

 On 7 July 2008, Dr. Williams submitted a forensic psychiatric evaluation. Dr.

Williams diagnosed Defendant with schizophrenia, paranoid type and substance

dependence. Dr. Williams concluded that Defendant exhibited deficits, which

impaired his ability to rationally and factually understand the trial process.

Specifically, Defendant’s delusion that his current criminal charges were related to a

tort claim against the State. Dr. Williams further concluded Defendant “does not

have the capacity to assist counsel in preparing and implementing a defense.”

 B. Dr. Vance’s Evaluation

 In September 2008, Defendant was evaluated by Dr. Charles Vance, M.D.,

PhD. (“Dr. Vance”). Defendant continued to assert his beliefs in his tort claim and

added that other patients were “messing” with him and that he could hear whispered

threats. Dr. Vance reported that on one occasion Defendant became violent with

hospital staff. On 30 October 2008, Dr. Vance concluded Defendant was not

malingering and he met the criteria for a diagnosis of paranoid schizophrenia. Dr.

Vance further concluded Defendant’s ability to participate meaningfully in trial “was

substantially impaired by his ongoing mental illness.”

 On 22 December 2008, the court found and concluded Defendant did not have

the legal capacity to assist counsel in preparing and implementing a defense to the

pending charges. On 8 September 2009, the trial court issued an order finding

Defendant incompetent to stand trial. The following day, Defendant’s counsel and

 -4-
 STATE V. WILLIAMS

 Opinion of the Court

the State entered into a stipulation that Defendant was incompetent to proceed to

trial.

 C. Dr. Messer’s Evaluation

 In late September 2009, Defendant’s competency to stand trial was reassessed.

Dr. Julia Messer, Ph.D (“Dr. Messer”) examined Defendant and prepared the report.

Again, she diagnosed Defendant with paranoid schizophrenia. Defendant told the

staff that strangers could “derail his lawsuit by standing too close to him and

sneezing.” Defendant further reported that former President George W. Bush, then

President Barack Obama, and talk show host, Oprah Winfrey, were aware of his

situation. Defendant felt his mother may have been a “witch at various times in the

past.”

 Defendant reported having the following hallucinations: seeing shadows that

were always present, hearing his deceased father breathing heavily in his closet, and

seeing a “big parrot made out of fog.” Defendant also maintained his belief that in

order to sue the State he had to kill somebody. On 7 October 2009, Dr. Messer found

Defendant’s test scores and behavior were consistent with paranoia, and not attempts

to feign or exaggerate mental illness. She concluded Defendant was not competent

to stand trial.

 -5-
 STATE V. WILLIAMS

 Opinion of the Court

 On 9 October 2009, the State dismissed the charges with leave, due to

Defendant being incapable of proceeding to trial. On 10 March 2014, the State

entered a Notice of Reinstatement of Charges.

 D. Dr. Vance’s Re-Evaluation

 In October 2015, Defendant reported thoughts of hanging himself because

purportedly “the devil told him to hurt himself.” Defendant was prescribed

olanzapine, an antipsychotic medication, which appeared to alleviate his psychotic

symptoms. Dr. Vance re-evaluated Defendant. During this examination, Defendant

did not raise his “tort claim” as a reason for his current legal situation. Defendant

stated “it ain’t related” to his current pending criminal charges.

 Dr. Vance reported Defendant appeared embarrassed by and dismissive of his

past claims. Dr. Vance found Defendant’s “presentation during this current

evaluation was wholly unexpected.” Dr. Vance further found Defendant “completely

disavows those previous psychotic beliefs and shows a very good orientation to the

reality of the case, even though he is [presently] receiving lower dose of antipsychotic

medication.” Dr. Vance issued a report concluding Defendant was competent to

proceed at trial on 4 November 2015. On 4 February 2016 the State entered another

Notice of Reinstatement of Charges.

 E. Dr. Blanks’ Evaluation

 -6-
 STATE V. WILLIAMS

 Opinion of the Court

 On 21 July 2016, Dr. Richard Blanks, J.D., M.D., an Adult and Forensic

Psychiatrist, (“Dr. Blanks”) met with Defendant at the Craven Correctional

Institution. Dr. Blanks sent a letter to Defendant’s counsel stating that he had also

found Defendant was competent to stand trial on 10 October 2016. Upon joint

motions regarding Defendant’s competency from Defendant’s counsel and the State,

the trial court issued an order finding Defendant competent to stand trial on 23

October 2016.

 On 9 November 2016 Defendant was found in need of protective custody, due

to being an escape risk with anger problems. As the Vance County jail did not have

proper facilities to take care of him, a safekeeping order was issued. On 7 December

2017 a further safekeeping order was issued on the grounds that Defendant required

mental health treatment, psychiatric care and medication. On 20 April 2018, another

safekeeping order was issued due to Defendant’s unpredictable outbursts including

violent assaults.

 Defendant was tried 13 June 2018 through 14 June 2018. Defendant testified

and offered evidence at his trial. The jury returned a verdict and found Defendant

guilty of first-degree murder and attempted murder. Defendant was sentenced to a

mandatory life sentence without parole for the first-degree murder conviction of

Ziegler, and not less than 480 months and not more than 585 months for attempted

murder of Venable. Defendant gave oral notice of appeal from both judgments.

 -7-
 STATE V. WILLIAMS

 Opinion of the Court

 II. Jurisdiction

 This Court possesses jurisdiction pursuant to N.C. Gen. Stat. §§ 7A-27(b) and

15A-1444(a) (2017).

 III. Issue

 Defendant’s sole argument on appeal asserts the trial court erred by not sua

sponte ordering a competency assessment to protect his constitutional rights to due

process.

 IV. Analysis

 A. Standard of Review

 “[A] person whose mental condition is such that he lacks the capacity to

understand the nature and object of the proceedings against him, to consult with

counsel, and to assist in preparing his defense may not be subjected to a trial.” Drope

v. Missouri, 420 U.S. 162, 171, 43 L. Ed. 2d 103, 112-113 (1975). “[T]he conviction of

an accused person while he is legally incompetent violates due process[.]” State v.

Taylor, 298 N.C. 405, 410, 259 S.E.2d 502, 505 (1979) (citations omitted). “The

standard of review for alleged violations of constitutional rights is de novo.” State v.

Graham, 200 N.C. App. 204, 214, 683 S.E.2d 437, 444 (2009) (citation omitted).

 B. Competency

 -8-
 STATE V. WILLIAMS

 Opinion of the Court

 Defendant asserts the trial court’s failure to sua sponte order a competency

evaluation violates his constitutional right to due process. N.C. Gen. Stat. § 15A-

1001(a) (2017) provides:

 No person may be tried, convicted, sentenced, or punished
 for a crime when by reason of mental illness or defect he is
 unable to understand the nature and object of the
 proceedings against him, to comprehend his own situation
 in reference to the proceedings, or to assist in his defense
 in a rational or reasonable manner.

“The question of the capacity of the defendant to proceed may be raised at any time

on motion by the prosecutor, the defendant, the defense counsel, or the court. N.C.

Gen. Stat. § 15A-1002(a) (2017).

 In State v. Badgett our Supreme Court held:

 under the Due Process Clause of the United States Constitution,
 a criminal defendant may not be tried unless he is competent. As
 a result, a trial court has a constitutional duty to institute, sua
 sponte, [a] competency hearing if there is substantial evidence
 before the court indicating that the accused may be mentally
 incompetent. In enforcing this constitutional right, the standard
 for competence to stand trial is whether the defendant has
 sufficient present ability to consult with his lawyer with a
 reasonable degree of rational understanding and has a rational
 as well as factual understanding of the proceedings against him.

State v. Badgett, 361 N.C. 234, 259, 644 S.E.2d 206, 221 (2007) (alteration in original)

(citations and quotation marks omitted).

 This Court has stated, “a trial judge is required to hold a competency hearing

when there is a bona fide doubt as to the defendant’s competency even absent a

 -9-
 STATE V. WILLIAMS

 Opinion of the Court

request.” State v. Staten, 172 N.C. App. 673, 678, 616 S.E.2d 650, 654-55 (2005)

(citation omitted). “Failure of the trial court to protect a defendant’s right not to be

tried or convicted while mentally incompetent deprives him of his due process right

to a fair trial.” State v. McRae, 139 N.C. App. 387, 389, 533 S.E.2d 557, 559 (2000)

(citations omitted). “Evidence of a defendant’s irrational behavior, his demeanor at

trial, and any prior medical opinion on competence to stand trial are all relevant to a

bona fide [sic] doubt inquiry.” Id. at 390, 533 S.E.2d at 559 (citation and quotation

marks omitted).

 The transcript and record indicate Defendant did not behave inappropriately

or otherwise disrupt the trial court’s proceedings. The facts and Defendant’s conduct

before, during, and after trial are contrary to this Court’s holdings in State v. Mobley,

State v. Whitted, and State v. Ashe cited by Defendant. In Mobley, the defendant was

heavily medicated for serious psychiatric and physical diseases, was unable to remain

awake during trial, and was incapable of consulting with his attorney or participating

in his defense. State v. Mobley, 251 N.C. App. 665, 795 S.E.2d 437 (2017). In Whitted,

the defendant uttered strange outbursts during trial, did not want to come into the

courtroom, had to be forcibly brought into court sessions, while reciting incoherent

prayers. State v. Whitted, 209 N.C. App. 522, 705 S.E.2d 787 (2011).

 In Ashe, this Court held the trial court erred when it failed to act sua sponte

and order a competency hearing. State v. Ashe, 230 N.C. App. 38, 43-44, S.E.2d 610,

 - 10 -
 STATE V. WILLIAMS

 Opinion of the Court

623 (2013). This Court held substantial evidence the defendant was incompetent due

to defendant’s extensive mental illness, the trial court’s and defense counsel’s

concerns about the defendant’s ability to control himself during the proceedings, and

defendant’s actual conduct during trial. Id.

 In McRae, our Court considered the appeal of a defendant who suffered from

schizophrenia and psychosis. McRae, 139 N.C. App. at 387, 533 S.E.2d at 587. The

defendant underwent six or more psychiatric evaluations over a seventeen-month

period with differing conclusions of whether the defendant was competent to stand

trial. Id. at 390-91, 533 S.E.2d at 560. Following a mistrial, the court did not conduct

another competency hearing and subsequently retried the charges five days later. Id.

at 391, 533 S.E.2d at 560. The defendant was reported to have a high “risk of relapse.”

Id. at 390, 533 S.E.2d at 559. This Court noted the defendant’s history of not taking

his medication as prescribed. Id. at 392, 533 S.E.2d at 561.

 Here, using the framework set forth in McRae, the trial court was presented

with substantial medical evidence, a joint motion by counsel, and Defendant’s own

statements establishing that he was competent to stand trial at the time trial began.

The trial court considered the independent opinions of two medical experts, who both

had concluded Defendant was competent to stand trial. According to those records,

Defendant had been diagnosed as a paranoid schizophrenic with substance abuse

 - 11 -
 STATE V. WILLIAMS

 Opinion of the Court

issues. Defendant had consistently been found incompetent to stand trial for over

nine years.

 Following significant changes in Defendant’s behaviors, statements, two

evaluations finding Defendant capable to stand trial, and joint motions attesting that

Defendant was capable to stand trial, the trial court questioned Defendant and

proceeded to trial. While Dr. Vance’s competency evaluation noted he was surprised

to see the changes in Defendant’s condition, he made no mention of Defendant’s risk

to relapse, only that he could not assure the court Defendant’s “improved mental

status will persist indefinitely.”

 Unlike McRae, where the defendant’s competency was dependent upon

medication to attain competency, Defendant was noted by Dr. Vance to be “receiving

a lower dose of antipsychotic medication” when Defendant was found competent to

stand trial. Here, Defendant, once found competent, was not further found to be

incompetent.

 In State v. Chukwu this Court found irrational beliefs and nonsensible

positions were not grounds by themselves to raise a bona fide doubt about the

defendant’s competency. State v. Chukwu, 230 N.C. App. 553, 749 S.E.2d 910 (2013).

The defendant held himself out to be a Nigerian diplomat and had refused to

cooperate with his attorney believing she had a “hidden agenda.” Id. at 563, 749

S.E.2d at 917. Here, Defendant participated in his own defense, made trial decisions

 - 12 -
 STATE V. WILLIAMS

 Opinion of the Court

regarding having Dr. Vance testify, and took the stand to testify on his own behalf

after making a knowing and voluntary waiver of his right to not testify.

 On the morning before the second day of trial, Dr. Vance spoke with Defendant

before Dr. Vance testified at Defendant’s request. Dr. Vance required Defendant’s

permission to testify about prior competency evaluations. Dr. Vance testified he

believed Defendant was competent to provide informed consent to his testimony

about Defendant’s prior medical history.

 Defendant argues his trial testimony describing his delusions, under which he

conducted the murder, and the testimony of Venable concerning Defendant shows

substantial evidence of his incapacity to proceed. Our examination of the record does

not indicate Defendant still asserted these delusions nor was unable to assist his

attorney at trial. “So long as a defendant can confer with his or her attorneys so that

the attorney may interpose any available defenses for him or her, the defendant is

able to assist his or her defense in a rational manner.” State v. Shytle, 323 N.C. 684,

689, 374 S.E.2d 573, 575 (1989). The transcript and record reflect Defendant

responded to all inquiries and was an active, willing, and lucid participant in his trial.

 Defendant further argues that his own testimony, Venable’s testimony, and

the testimony of the medical experts show substantial evidence of his incompetence.

This Court has held a defendant, who had been diagnosed with dementia, and

appeared to ramble on the stand through his testimony, did not show substantial

 - 13 -
 STATE V. WILLIAMS

 Opinion of the Court

evidence he was mentally incompetent at trial. State v. Coley, 193 N.C. App. 458, 464,

668 S.E.2d 46, 51 (2008).

 Defendant asserts his own testimony was “jumbled and disorganized” and

demonstrated at the time of trial he still believed the government involvement with

the lawsuit was “somewhere around here now.”

 At trial, Defendant testified his father was deceased. Defendant testified

Champagne was someone he saw modeling in a magazine and wrote letters to, but

received no reciprocal attention from her nor had ever met her in person. In

evaluating Defendant’s testimony, we conclude when discussing his delusions at the

time the murder occurred, Defendant speaks using the past tense and not the present

tense.

 With regard to the testifying medical experts, Drs. Vance and Messer,

Defendant argues their testimony was substantial evidence demonstrating his

incompetence. Both experts testified Defendant had suffered from schizophrenia.

Both testified Defendant no longer believed that the purported civil lawsuit had

impacted his criminal conduct or charges or that he was a famous rap musician.

 Dr. Vance testified no cure exists for schizophrenia and that treatment needs

to be continued for the patient’s lifetime. Defendant continues to receive treatment,

Defendant was found to be competent to stand trial by both doctors, and both doctors

testified Defendant had not been “aggressive or agitated here in the courtroom.” The

 - 14 -
 STATE V. WILLIAMS

 Opinion of the Court

record indicates neither expert testified Defendant was still incompetent prior to

trial, during trial or at sentencing.

 1. Venable’s Testimony

 Venable testified she had little contact with Defendant when he was

incarcerated at Central Prison. Her only contact with Defendant came when he was

housed at Dorthea Dix Hospital and later Central Regional Hospital. Venable further

testified that she noticed a difference in Defendant’s mental health after he had been

to Central Regional Hospital, and believed his improvement occurred because he was

no longer “drinking and drugging.” Venable said that Defendant had gone “off the

deep end” after being in solitary confinement. Venable further testified to the

following:

 [Venable]: For real, now, yes. He’s – he’s saying he’s got
 this big lawsuit, he’s saying he’s getting a lot of money.
 And nobody won’t even tell him that he’s not getting no
 money and stuff.

 That’s why he taking this jury trial, because he been saying
 they just gonna let him get out so he can spend his money.
 He think he got all this money and stuff. He think he got
 record deals, he think he got money.

 [Prosecutor]: Now, how do you know that?

 [Venable]: He writes me. I talks to him. He called me
 yesterday on the phone.

Venable never stated that Defendant had told her recently or “yesterday” that he was

still under these delusions. These delusions occurred in the past. Venable did not

 - 15 -
 STATE V. WILLIAMS

 Opinion of the Court

testify Defendant currently suffered these delusions. While Venable is a victim of

one of the incidents Defendant was tried for, she is also Defendant’s mother, who was

testifying as a witness for her son, who had plead Not Guilty by Reason of Insanity

to both the first degree murder of Ziegler and the attempted murder of her.

 Venable further testified:

 [Prosecutor]: Had you every heard him talking about
 Champagne?

 [Venable]: All the time. He still talk about it right now. He
 write me about it.

 [Prosecutor]: What does he write you?

 [Venable]: Have I seen her. Is anybody taking care of her.
 They gonna get married.

 Again, Venable did not state any time frame when these purported delusions

had occurred or when the letters were written. Given her relationship with

Defendant, his plea during this trial, and her limited contact with Defendant since

his incarceration and institutionalization after his arrest, her testimony does not

raise “substantial evidence” of Defendant’s incompetence to stand for and participate

at trial. See Young, 291 N.C. at 567, 231 S.E.2d at 581.

 Our Court recently interpreted State v. McRae in the case of State v. Hollars.

In finding evidence of a bona fide doubt of the defendant’s competency to stand trial,

this Court reviewed seven prior forensic evaluations with differing results opining to

the defendant’s competency. State v. Hollars, ____ N.C. App. ____, ____, ____ S.E.2d

 - 16 -
 STATE V. WILLIAMS

 Opinion of the Court

____, ____, 2019 WL 3558770, *5 (2019). The Court also looked at a forensic

psychologist’s report finding “It is also possible his condition may deteriorate with the

stress of a trial so vigilance is suggested if his case proceeds in a trial.” Id. at *2.

Furthermore, in Hollars the defendant’s competency hearing occurred five months

after the defendant’s last forensic examination. Id. at *5. The Court noted there was

no extended colloquy between the defendant and the trial court, and the defendant

never testified in a manner to demonstrate he was competent to stand trial.

 2. Defendant’s Testimony

 Here, and unlike the facts in Hollars, Defendant engaged in two lengthy

colloquies with the trial court and later waived his right not to testify, took the stand

and testified lucidly and at length on his own behalf. This last factor leads to the

Court’s analysis in State v. Staten.

 We find the factors in State v. Staten to provide the most guidance. In Staten,

the defendant wanted to testify on his own behalf. Staten, 172 N.C. App. at 679, 616

S.E.2d at 655. The trial court conducted the following colloquy to determine the

voluntariness of the Staten’s testimony and his understanding of possible outcomes:

 [The Court]: All right. Mr. Staten, you have talked to your
 attorney concerning the question of whether or not you
 should testify or not in this case?

 [Defendant]: Yes Sir.

 [The Court]: And you understand that if you do testify the
 State can ask you a lot of questions on cross-examination

 - 17 -
 STATE V. WILLIAMS

 Opinion of the Court

 about your prior record and things of that nature?

 [Defendant]: Yes sir.

 [The Court]: And you understand that may sway the jury
 somewhat? Sometimes it does. And it could be that it
 doesn’t work out to your advantage.

 [Defendant]: Yes sir.

 [The Court]: Are you telling me now that even though you
 understand the consequences of your decision to testify you
 still want to go through with it?

 [Defendant]: I want to testify and tell everybody like came
 [sic] behind me and testified after I already testified and
 say something about me and I want to testify again to clear
 up what they have said like we did the last time.

Id. at 679-80, 616 S.E.2d at 655.

 The Court found “the defendant’s replies were lucid and responsive,

demonstrating his desire to testify and displaying his understanding of the

consequences of doing so.” Id. at 680, 616 S.E.2d at 655. These factors demonstrated

the defendant was competent to stand trial. Id.

 Here, two similar colloquies between the trial court and Defendant occurred.

The trial court inquired about Defendant’s permission for his counsel to admit to the

jury he had initiated and participated in the death of Ziegler and the injuries to

Venable as a part of his insanity plea. The following colloquy occurred:

 [The Court]: Mr. Williams, if you’ll stand, please, sir. I just
 want to talk to you about some things. You’ve entered a
 plea of not guilty by reason of insanity in this case, you

 - 18 -
 STATE V. WILLIAMS

 Opinion of the Court

understand that?

[Defendant]: Yes, sir.

[The Court]: Your attorney needs your permission if he’s to
admit to the jury that you, in fact, participated in the death
of Mr. Ziegler and the wounding of your mother, Ms.
Venable; do you understand that?

[Defendant]: Yes, sir.

[The Court]: In giving that permission, he’s written down
something that would—you will—you may, if you would
want to, stipulate to – or, that is, stipulate to by giving him
permission to argue to the jury or make this concession on
your behalf.

And that is, “Rodney McDonald Williams does hereby
authorize his attorney, Larry Norman, to state that he
fired the weapon that caused the death of Leo Zielger and
wounded Shirley Venable on October 27, 2007.” And you do
authorize your attorney to state that on your behalf during
your trial; do you understand that?

[Defendant]: Yes, sir.

[The Court]: Now, I want to go over one or two things with
you. You understand that you’re charged with First Degree
Murder; do you understand that?

[Defendant]: Yes, sir.

[The Court]: And that the maximum penalty for that is life
in prison, do you understand that?

[Defendant]: Yes, sir.

[The Court]: And you’re charged with Attempted First
Degree Murder: do you understand that?

 - 19 -
 STATE V. WILLIAMS

 Opinion of the Court

[Defendant]: Yes sir.

....

[The Court]: The maximum sentence you could receive on
that offense would be 483 months and – minimum, and a
whole lot of other things, maximum; I haven’t figured that
out. Do you understand that?

[Defendant]: Yes, sir.

[The Court]: Now, knowing that, do you give your
permission to your attorney to make these arguments to
the jury that you and I went over – or make these
admissions?

Defendant: Yes, sir.

[The Court]: Has anyone threatened you, promised you
anything, coerced you in any way to get you to give your
attorney these –

[Defendant]: No, sir.

[The Court]: -- this authorization?

[Defendant]: No, sir.

[The Court]: And you find it to be in your best interest for
your attorney to be able to make these admissions to the
jury on your behalf; is that correct?

[The Defendant]: Yes, sir.

[The Court]: Do you have any questions you want to ask me
about making – or giving your attorney the authorization
to make those admissions on your behalf?

[The Defendant]: No, sir.

 - 20 -
 STATE V. WILLIAMS

 Opinion of the Court

 [The Court]: And as you stand right now, you’re satisfied
 with your lawyer’s legal services?

 [Defendant]: Yes, sir.

 [The Court]: And you and he have discussed the possible
 defenses you might have to these charges, and the insanity
 defense is one that you’re comfortable with and you’re
 satisfied with; is that correct?

 [Defendant]: Yes, sir.

Later, the trial court inquired into Defendant’s desire to testify:

 [The Court]: Mr. Williams, have you had a chance to talk
 to Mr. Norman about whether to testify or not?

 [Defendant]: Yes, sir.

 [The Court]: And have you come to a decision satisfactory
 to yourself, with nobody forcing you or promising you
 anything in any way was to what you think your best
 interest is?

 [Defendant]: Yes, sir.

 [The Court]: And what have you decided to do?

 [Defendant]: I’d like to go forward with the trial, sir.

 [The Court]: Well, we’ll go forward with the trial, but the
 question is whether or not you want to testify or not?

 [Defendant]: Yes, sir, I want to testify.

 [The Court]: Okay. That’s fine.

Like the exchanges in Staten, these colloquies and Defendant’s answers to the trial

court’s questions also demonstrate and support Defendant’s competence. Defendant

 - 21 -
 STATE V. WILLIAMS

 Opinion of the Court

engaged in a lengthy colloquy with the trial court, Defendant’s responses were “lucid

and responsive,” and his testimony was rational concerning his present beliefs and

desire to participate in and testify at his trial. See Staten, 172 N.C. App. at 679-84,

61 S.E.2d at 655-58. Defendant’s arguments are overruled.

 V. Conclusion

 Defendant has failed to demonstrate substantial evidence tending to show

Defendant’s incompetence at any time during his trial. We hold the trial court did

not err by not sua sponte ordering a further competency hearing.

 Defendant received a fair trial, free from prejudicial errors he preserved and

argued. We find no error in the jury’s verdicts or in the judgments entered thereon.

It is so ordered.

 NO ERROR.

 Judges DIETZ and YOUNG concur.

 - 22 -